*Commerzbank AG v. U.S. Bank, N.A.*

# In the
# United States Court of Appeals
# for the Second Circuit

---

August Term 2022
Argued: June 30, 2023
Decided: April 30, 2024

---

No. 22-854

---

COMMERZBANK AG,
*Plaintiff-Appellant*,

v.

U.S. BANK, N.A.,
*Defendant-Appellee*,

BANK OF AMERICA, N.A.,
WELLS FARGO BANK, N.A.,
*Defendants.*

---

Appeal from the United States District Court
for the Southern District of New York
No. 16-4569, Denise L. Cote and William H. Pauley III,
District Court Judges.

---

Before: LYNCH, BIANCO, and PÉREZ, *Circuit Judges*.

On appeal from five separate orders issued by the United States District Court for the Southern District of New York (Cote and Pauley, *JJ.*).

This appeal falls into a category of cases known as Residential Mortgage-Backed Securities suits, which arose from the collapse of the subprime mortgage market in the late 2000s. The district court, in a series of orders, grappled with a tangle of complex procedural questions, including three primary issues that we

must resolve in this appeal, concerning: (1) a contractual bar to claims involving trusts with "No Action Clauses"; (2) the timeliness of claims related to certificates held through German entities; and (3) whether Commerzbank can bring claims related to certificates it had sold to third parties.

We AFFIRM the district court's orders in all but one respect—the dismissal of Commerzbank's claims related to trusts with No Action Clauses, which we VACATE—and REMAND for proceedings consistent with this opinion. The parties also contest, on the merits, whether the district court properly interpreted the governing contracts. We need not reach that issue, however, because claims for all the trusts related to the merits issue are either untimely or cannot be brought by Commerzbank under the relevant statute.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

_____

DAVID H. WOLLMUTH (Ryan A. Kane, Phillip R. Schatz, *on the brief*), Wollmuth Maher & Deutsch LLP, New York, NY, *for Plaintiff-Appellant.*

LOUIS A. CHAITEN (David F. Adler, Michael T. Marcucci, and Amanda R. Parker, *on the brief*), Jones Day, Cleveland, OH, Boston, MA, *for Defendant-Appellee.*

_____

2

MYRNA PÉREZ, *Circuit Judge*:

This appeal falls into a category of cases known as Residential Mortgage-Backed Securities ("RMBS") suits, which arose from the collapse of the subprime mortgage market in the late 2000s. The district court, in a series of orders, grappled with a tangle of complex procedural questions, including three primary issues that we must resolve in this appeal concerning: (1) a contractual bar to claims involving trusts with "No Action Clauses" (the "Contractual Bar" issue); (2) the timeliness of claims related to certificates held through German entities (the "Timeliness" issue); and (3) whether Plaintiff-Appellant Commerzbank AG ("Commerzbank") can bring claims related to certificates it had sold to third parties (the "Cause of Action" issue).

We affirm the district court's orders in all but one respect—the dismissal of Commerzbank's claims related to trusts with No Action Clauses, which we vacate—and remand for proceedings consistent with this opinion. We explain our reasoning in further detail below. The parties also contest, on the merits, whether the district court properly interpreted the governing contracts. We need not reach that issue, however, because claims for all the trusts related to the merits issue are either untimely or cannot be brought by Commerzbank under the relevant statute.

## I. Prior Proceedings

Commerzbank initiated this action seeking to recover losses stemming from its purchase of RMBS certificates related to fifty-six trusts administered by Defendant-Appellee U.S. Bank ("USB") and Defendant Bank of America. Commerzbank alleged that USB had a duty to monitor, notify, and act against the mortgage originator, sponsor, and servicer for any breaches committed under the governing trust documents.

In this appeal, Commerzbank challenges five orders entered by the district court: (1) granting in part USB's motion to dismiss in September 2017; (2) granting in part USB's motion for summary judgment in April 2020; (3) denying Commerzbank's motion to reconsider the order granting summary judgment in part to USB in February 2021; (4) granting USB's subsequent motion for summary judgment in September 2021; and (5) denying Commerzbank's motion to reopen the case to move for reconsideration of the order granting summary judgment in part to USB in March 2022.

## II.   Introductory Context[1]

We begin with a brief background on RMBS and the securitization process before turning to our discussion of the instant case and issues presented on appeal.

An RMBS is created by an entity, such as a bank, that packages residential mortgages into a single pool of mortgages and then sells bonds backed by that pool of mortgages. The entities then sell to financial institutions securities that derive their value from the right to payment on these mortgages. When homeowners began defaulting on their mortgages in the wake of the 2008 housing market collapse, the value of such securities plummeted.

### A. The Creation of Residential Mortgage-Backed Securities

The process for creating an RMBS begins when a lender (or multiple lenders) (the "originator") issues mortgages and sells them to another financial institution (the "seller" or "sponsor"). The sponsor then pools the mortgages and transfers them to an affiliated special purpose vehicle (the "depositor"). The depositor subsequently conveys the bundled mortgages to a trust managed by a trustee, where they are prioritized into tranches of entitlements to payments from

---

[1] The following facts are taken largely from the various district court decisions and are undisputed unless otherwise noted. The relevant facts for each issue on appeal are provided in greater detail below, in the applicable discussion section.

the borrowers. Each tranche in the loan securitization reflects a different level of risk and reward.

The trust issues certificates (*i.e.*, RMBS) representing interests in those tranches to underwriters, who then market and sell the certificates to investors such as Commerzbank. Sales of RMBS in the secondary market generally occur through a "clearing house" service. A clearing house is a designated intermediary between a buyer and seller in a financial market, brought in to mitigate the risk of one of the parties failing to honor their obligations. The investor (or "certificateholder") may pay more or less for a certificate depending on the level of risk and reward associated with each tranche. Because the certificates are secured by the mortgages held in trust, their expected rate of return hinges on the performance of the mortgages and the borrowers' ability to repay.

### B. The Pooling and Servicing Agreements

Each trust is governed by a document called a Pooling and Servicing Agreement ("PSA"). Under a PSA, a servicer is appointed to manage the collection of payments on the mortgage loans. The servicer's responsibilities consist of monitoring delinquent borrowers, foreclosing on defaulted loans, checking

6

compliance with representations and warranties in the loans, tracking mortgage documentation, and managing and selling foreclosed properties.

A PSA also enumerates the trustees' duties and obligations. Those duties are bifurcated into pre-Event of Default ("pre-EOD") and post-Event of Default ("post-EOD") duties. The Event of Default ("EOD") terms in the PSA dictate the avenue by which a certificateholder can recover its losses.

## C. The Market Collapse and RMBS Suits

In 2008, an economic bubble in the housing market collapsed, and homeowners across the country began defaulting on mortgages at an alarming rate, causing the value of RMBS to plummet. The collapse gave rise to a range of RMBS suits brought by investors and financial institutions that lost money. These suits often alleged fraud, breach of contract, or other impropriety in the underwriting, originating, and selling of mortgage loans primarily through RMBS transactions. The suits were brought against the banks, trustees, and servicers who originated the subprime mortgage loans and repackaged them into RMBS financial instruments.

With this background in mind, we turn to the events leading to this appeal.

7

## III. Factual Background

Commerzbank, an RMBS certificateholder, initiated this action seeking to recover losses stemming from its purchase of RMBS certificates related to 56 trusts[2] from USB, a trustee, for breaching its duty to monitor, notify, and take action against the mortgage originator, sponsor, and servicer for any breaches committed under the PSAs. The primary issues presented on appeal pertain to different trusts and certificates, which we describe below.

### A. The No Action Trusts

A number of the PSAs in this case include No Action Clauses, which preclude claims arising from the PSA unless the plaintiff: provides written notice of an EOD to a specified party; assembles the support of a specified percentage of other certificateholders; demands that a specified deal party initiate the suit; and offers indemnification for that suit. Seventeen trusts governed by PSAs with No

---

[2] The trusts are as follows: ABSHE 2005-HE8; ABSHE 2006-HE1; ABSHE 2006-HE5; BSABS 2005-EC1; BSABS 2005-HE10; BSABS 2005-HE4; BSABS 2005-HE7; BSABS 2005-HE9; BSARM 2006-2; CHASE 2006-A1; CMLTI 2005-10; CMLTI 2005-HE1; CMLTI 2005-HE3; CMLTI 2005-HE4; CMLTI 2006-AR7; CMLTI 2006-NC2; CMLTI 2006-WFHE2; CMLTI 2006-WFHE3; CMLTI 2006-WFHE4; CMLTI 2007-AMC2; CMLTI 2007-AR1; CMLTI 2007-WFHE1; CMLTI 2007-WFHE2; CSAB 2006-4; FFMER 2007-2; GSAA 2006-12; GSAA 2007-1; GSAMP 2006-HE5; GSAMP 2006-HE6; HEAT 2005-2; HEAT 2005-4; HEAT 2005-9; HEAT 2006-4; HEAT 2006-6; HEAT 2007-2; JPALT 2006-A6; JPALT 2007-S1; JPMAC 2005-FRE1; JPMAC 2005-WMC1; JPMAC 2006-CH1; JPMAC 2006-CH2; JPMAC 2006-CW2; JPMAC 2006-NC2; MABS 2005-FRE1; MABS 2006-AM2; MABS 2006-AM3; MABS 2006-NC2; MARM 2007-HF2; MLMI 2006-AHL1; MSM 2006-15XS; SABR 2006-WM1; SURF 2007-BC1; WAMU 2007-OA2; WAMU 2007-OA6; WMALT 2007-OA2; WMALT 2007-OC1.

Action Clauses (the "No Action Trusts") are central to the Contractual Bar issue on appeal.[3]

## B. The German Certificates

A number of Commerzbank's certificates relevant to this action are held through German entities (the "German Certificates").[4]  The German Certificates are central to the Timeliness issue on appeal.

---

[3] The following trusts are "No Action Trusts": CMLTI 2005-HE3; CMLTI 2005-HE4; CMLTI 2006-NC2; CMLTI 2006-WFHE2; CMLTI 2006-WFHE3; CMLTI 2006-WFHE4; CMLTI 2007-AMC2; CMLTI 2007-WFHE1; CMLTI 2007-WFHE2; CSAB 2006-4; JPMAC 2005-FRE1; JPMAC 2005-WMC1; JPMAC 2006-CH1; JPMAC 2006-CH2; JPMAC 2006-CW2; JPMAC 2006-NC2; MARM 2007-HF2.  Joint App'x at 85–87 (listing No Action Trusts).

[4] The following certificates are "German Certificates": ABSHE 2005-HE8, M5; ABSHE 2005 HE8, M6; ABSHE 2006 HE1, M7; BSABS 2005 EC1, M8; BSABS 2005-HE10, M3; BSABS 2005-HE4, M5; BSABS 2005-HE7, M3; BSABS 2005-HE9, M4; BSARM 2006-2, 3A3; CMLTI 2005-10, 1A34; CMLTI 2005-HE1, M6; CMLTI 2005-HE3, M5; CMLTI 2005-HE3, M6; CMLTI 2005-HE4, M6; CMLTI 2006-AR7, lA3B; CMLTI 2006-NC2, M2 Palmer; CMLTI 2006-WFHE2, M3; CMLTI 2006-WFHE2, M5 Palmer; CMLTI 2006-WFHE3, M6 Palmer; CMLTI 2007-AMC2, M4; CMLTI 2007-AR1, M1; CMLTI 2007-WFHE2, M3; FFMER 2007-2, A2D; GSAA 2006-12, M4; GSAA 2007-1, M3; HEAT 2005-2, B1; HEAT 2005-4, B1; HEAT 2005-4, M7; HEAT 2006-4, M7; HEAT 2007-2, M1; HEAT 2007-2, M3; JPALT 2006-A6, 2A8; JPMAC 2005-FRE1, M6; JPMAC 2005-FRE1, M7; JPMAC 2005-WMC1, M5; JPMAC 2005-WMC1, M6; JPMAC 2005-WMC1, M7; JPMAC 2006-CW2, MV3; MABS 2005-FRE1, M4; MABS 2006-AM2, A4; MABS 2006-AM3, A4; MABS 2006-NC2, M3; MARM 2007-HF2, A2; SABR 2006-WM1, A2C; SURF 2007-BC1, M5; WAMU 2007-OA2, B1; WAMU 2007-OA6, B1; WAMU 2007-OA6, B2; WMALT 2007-OA2, B1; WMALT 2007-OA2, B2; WMALT 2007-OC1, A1.  Special App'x at 36 n.8 (listing German Certificates).

## C. The Sold Certificates

Commerzbank sold several certificates to third parties (the "Sold Certificates").[5] The settlement of the sales of those Sold Certificates was conducted through a clearing house called the Depository Trust Company ("DTC"). The role of the DTC is to "operate[] a securities settlement system," including by:

> (1) holding securities in physical form (but immobilized) or holding securities in dematerialized form; (2) maintaining securities accounts for Participants; (3) providing Participants with central safekeeping services and asset services, including the administration of corporate actions and redemptions; and (4) transfers and pledges of securities, and the settlement of transactions for Participants . . . .

Joint App'x at 855–56. The Sold Certificates are central to the Cause of Action issue on appeal.

## IV. Procedural Background

There are five orders at issue in this appeal. We discuss each in turn, along with other relevant procedural history.

---

[5] The following certificates are "Sold Certificates": ABSHE 2005-HE8, M5; BSABS 2005-HE10, M3; BSABS 2005-HE4, M5; BSABS 2005-HE7, M3; BSABS 2005-HE9, M4; BSARM 2006-2, 3A3; CMLTI 2005-HE3, M5; CMLTI 2005-HE3, M6; CMLTI 2006-WFHE2, M3; CMLTI 2006-WFHE2, M5 Palmer; CMLTI 2006-WFHE3, M6 Palmer; CMLTI 2006-WFHE4, M1; CMLTI 2007-WFHE2, M3; CSAB 2006-4, A6A; FFMER 2007-2, A2D; HEAT 2005-2, B1; HEAT2005-4, B1; HEAT 2005-4, M7; HEAT 2005-9, M2; JPALT 2006-A6, 2A4; JPALT 2006-A6, 2A8; JPMAC 2005-WMC1, M5; JPMAC 2005-WMC1, M6; JPMAC 2006-CW2, MV3; MABS 2006-AM2, A4; MABS 2006-AM3, A4; MARM 2007-HF2, A2; MSM 2006-15XS, A3; SABR 2006-WM1, A2C; WMALT 2007-OC1, A1. Special App'x at 30 n.5 (listing Sold Certificates).

## A. The Dismissal Order[6]

On September 27, 2017, the district court dismissed contract claims against USB related to the No Action Trusts. Dismissal Order at 23. It is undisputed that Commerzbank failed to provide the pre-suit demand required by the No Action Clauses.

The district court recognized that, under this Circuit's precedent, No Action Clauses do not bar certificateholder claims against a trustee because it would be "absurd to require the [certificateholders] to ask the trustee"—here, USB—"to sue itself." *Id.* at 15. However, it declined to extend this limitation to Commerzbank's No Action Trust claims, noting that the No Action Clauses in the relevant governing documents included, as additional or substitute notice parties, trust or securities administrators. *Id.* at 15–17. The district court rejected Commerzbank's argument that it would be "equally absurd" to require a certificateholder to make a pre-suit demand on these additional or substitute notice parties, who may also have a conflict of interest, noting that Commerzbank sued only the trustees, not the trust or securities administrators. *Id.* at 16.

---

[6] The "Dismissal Order" can be found at pages 1 to 23 of the Special Appendix. Citations to the Dismissal Order hereinafter will reference the internal pagination of the Order, rather than pagination of the Special Appendix.

**B. The April 2020 Summary Judgment Order[7]**

On April 28, 2020, the district court granted partial summary judgment in favor of USB as to tort claims for sixteen of the seventeen No Action Trusts[8] for failure to make a pre-suit demand. April 2020 Summary Judgment Order at 39–40. It also granted judgment for USB as to the claims relating to the Sold Certificates, reasoning that under New York law, Commerzbank lacked standing after selling the Sold Certificates to third parties. *Id.* at 7–10. The district court also granted judgment for USB as to certificates sold in a third-party repurchase agreement ("repo")[9] transaction (the "Duke Repo Certificates")[10] for lack of standing. *Id.* at 11–12. As such, the district court concluded that there was no evidence that the Duke Repo Certificates, which were transferred to a third party, were transferred back to Commerzbank. *Id.*

---

[7] The "April 2020 Summary Judgment Order" can be found at pages 24 to 67 of the Special Appendix. Citations to the April 2020 Summary Judgment Order hereinafter will reference the internal pagination of the Order, rather than pagination of the Special Appendix.

[8] The district court did not grant judgment as to tort claims relating to CSAB 2006-4 because the No Action Clause for that trust was cabined to post-EOD claims.

[9] "A repurchase agreement—commonly known as a 'repo'—involves a matched purchase and sale. First, the 'seller' agrees to sell assets, usually securities, to the 'buyer' for a fixed price. Second, the buyer agrees to resell those same assets back to the seller at a later date and for a slightly higher price—hence the name 'repurchase agreement.'" *In re Lehman Bros., Inc.*, 791 F.3d 277, 279 (2d Cir. 2015) (footnote omitted).

[10] The following certificates are "Duke Repo Certificates": BSARM 2006-2, A3A; CMLTI 2005-10, 1A34; CMLTI 2006-AR7, 1A3B; JPALT 2006-A6, 2A8; MABS 2006-AM2, A4; MABS 2006-AM3, A4; SABR 2006-WM1, A2C. Special App'x at 34 n.7 (listing Duke Repo Certificates).

12

Further, the district court granted judgment for USB as to the German Certificate claims. *Id.* at 12–18. In doing so, the district court reasoned that Ohio's borrowing statute,[11] which dictates which jurisdiction's statute of limitations applies for several of Commerzbank's claims, adopted Germany's statute of limitations. *Id.* at 12–14. Under the German statute of limitations, Commerzbank's German Certificate claims were barred as untimely. *Id.* at 14–18.

## C. The February 2021 Reconsideration Order[12]

On May 12, 2020, Commerzbank moved for reconsideration of the April 2020 Summary Judgment Order. The district court denied that motion on February 16, 2021. February 2021 Reconsideration Order at 13–14.

## D. The September 2021 Summary Judgment Order[13]

On a subsequent motion for summary judgment, the district court granted judgment to USB as to a single claim related to a Sold Certificate that had been resolved by the April 2020 Summary Judgment Order but appeared to be

---

[11] A "borrowing statute" is a "legislative exception to the general rule that a forum state always applies its own statute-of-limitations law." *Taylor v. First Resol. Inv. Corp.*, 72 N.E.3d 573, 585 (Ohio 2016).

[12] The "February 2021 Reconsideration Order" can be found at pages 68 to 81 of the Special Appendix. Citations to the February 2021 Reconsideration Order hereinafter will reference the internal pagination of the Order, rather than pagination of the Special Appendix.

[13] The "September 2021 Summary Judgment Order" can be found at pages 82 to 83 of the Special Appendix. Citations to the September 2021 Summary Judgment Order hereinafter will reference the internal pagination of the Order, rather than pagination of the Special Appendix.

overlooked in the dismissal portion of the order.  September 2021 Summary Judgment Order at 1–2.  At this point, the only remaining claims were related to eight certificates.

### E.  The Reopen Order[14]

In June 2021, approximately four months after the district court's decision on the motion for reconsideration, the Ohio legislature amended the borrowing statute to limit its scope only to tort claims and provided that the amendment should be applied retroactively.  *See* S.B. 13, 134th Gen. Assemb., Reg. Sess. (Ohio 2021); *see also* Ohio Rev. Code Ann. § 2305.03(B).  Prior to the amendment, the Ohio borrowing statute applied to civil claims generally.  *See* S.B. 13, 134th Gen. Assemb., Reg. Sess. (Ohio 2021).

On February 8, 2022, as the June 2022 trial date approached, the parties reached a settlement in principle and requested that the district court stay the case. The district court issued a "thirty-day order" discontinuing the case and giving the parties thirty days to inform the court if they wished to vacate the order and reopen the case.

---

[14] The "Reopen Order" can be found at pages 84 to 95 of the Special Appendix.  Citations to the Reopen Order hereinafter will reference the internal pagination of the Order, rather than pagination of the Special Appendix.

In March 2022, Commerzbank filed a motion to reopen the case as to the non-settled certificates, seeking to file a motion to reconsider the April 2020 Summary Judgment Order and citing the Ohio legislature's 2021 amendment of the Ohio borrowing statute applied in that order. Commerzbank contended that the district court should apply the amended Ohio borrowing statute retroactively; because Commerzbank's German Certificate claims sound in contract, the amended Ohio borrowing statute—and therefore the German statute of limitations—would no longer apply to bar its German Certificate claims. The district court denied the motion to reopen, concluding that a motion for reconsideration would be untimely. Reopen Order at 7–12.

## V. Analysis

Although the instant appeal concerns five separate orders, Commerzbank's challenges raise three primary questions—namely, whether: (1) Commerzbank is contractually barred from bringing claims arising from the No Action Trusts; (2) Commerzbank's German Certificate claims are untimely; and (3) Commerzbank can bring claims related to the Sold Certificates. Resolution of the procedural questions on appeal obviates the need to reach the merits issue—

15

specifically, whether USB was obligated to enforce the repurchase obligations under the PSAs of eleven trusts.[15]

## A. Commerzbank's Claims Arising From the No Action Trusts May Not Be Contractually Barred.

The first primary issue presented on appeal—and the sole issue on which we vacate and remand—concerns whether Commerzbank's claims arising from the No Action Trusts are contractually barred due to Commerzbank's failure to comply with the pre-suit obligations set forth in the No Action Clauses. This issue is implicated in two district court orders—the Dismissal Order and the April 2020 Summary Judgment Order. As relevant here, the No Action Clauses governing the No Action Trusts are similar in that they provide that:

> **No Certificateholder shall have any right by virtue of any provision of this Agreement to institute any suit, action or proceeding** in equity or at law upon or under or with respect to this Agreement, **unless** (i) such Holder previously shall have given to the Trustee and Trust Administrator a written notice of default and of the continuance thereof, as hereinbefore provided, and (ii) **the Holders of Certificates entitled to at least 25% of the Voting Rights shall have made written request upon the Trustee and the Trust Administrator [or Securities**

---

[15] The merits issue on appeal pertains to the following eleven trusts: BSABS 2005-EC1, BSABS 2005-HE10, BSABS 2005-HE4, BSABS 2005-HE7, BSABS 2005-HE9, HEAT 2005-2, HEAT 2005-4, HEAT 2005-9, HEAT 2006-4, HEAT 2007-2, ABSHE 2006-HE1. Notably, all the certificates relevant on appeal issued with respect to these trusts may be classified as German Certificates, Sold Certificates, or both. As such, as discussed *infra*, upon resolution of the Cause of Action issue (impacting Sold Certificate claims) and the Timeliness issue (impacting German Certificate claims), we need not address the merits arguments.

**Administrator] to institute such action, suit or proceeding in its own name as Trustee or Trust Administrator [or Securities Administrator] hereunder** and shall have offered to the Trustee or the Trust Administrator [or Securities Administrator], as applicable, such indemnity satisfactory to it against the costs, expenses and liabilities to be incurred therein or thereby, and the Trustee or the Trust Administrator [or Securities Administrator], for 15 days after its receipt of such notice, request and offer of indemnity, shall have neglected or refused to institute any such action, suit or proceeding.

Joint App'x at 77 (emphases added). In other words, the PSAs require certificateholders to demand that the trustee or servicers (in their capacity as trust or securities administrators) bring suit before doing so themselves. It is undisputed that Commerzbank did not make any pre-suit demands prior to bringing its claims.

We review de novo a district court's grant of both a motion to dismiss and motion for summary judgment. *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003). On a motion to dismiss, this Court "must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor," and grant dismissal where the complaint fails to state a claim "that would entitle the plaintiff to relief." *Id.* (citation omitted). "Summary judgment is appropriate only where, construing all the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in that party's favor, there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as

17

a matter of law." *Anilao v. Spota*, 27 F.4th 855, 871 (2d. Cir. 2022); *see also* Fed. R. Civ. P. 56(a).

1. This Court in *Cruden* Held That No Action Clauses Did Not Bar Investor Claims Against RMBS Trustees.

This Court has previously recognized an exception to No Action Clauses in the context of claims against trustees. In *Cruden v. Bank of New York,* we held that No Action Clauses may not be construed to bar investor claims against an RMBS trustee because it would be "absurd to require the debenture holders to ask the Trustee to sue itself." 957 F.2d 961, 968 (2d Cir. 1992). Central to the Contractual Bar issue is whether *Cruden* should be extended to excuse plaintiffs from making pre-suit demands of additional or substitute notice parties (*i.e.,* RMBS parties, other than the trustee, on whom the PSA authorizes pre-suit demands), for whom the same conflict of interest exists.

2. Extending *Cruden*, No Action Clauses Do Not Bar Claims Against Trustees When They Require Pre-Suit Demands on Other RMBS Parties For Whom a Sufficient Conflict of Interest Exists.

The No Action Clause in *Cruden* is distinguishable from the similar clauses in the instant case. In *Cruden*, we excused the plaintiff's failure to make a pre-suit demand because the No Action Clause required the demand to be made on the

18

trustee and concluded that such a demand would be futile because it would be "absurd" to ask the trustee to sue itself. *Id.*

But the *Cruden* court was not called to answer whether such exceptions would apply to other RMBS parties. We have previously recognized in a summary order "that there is a split among the courts in our Circuit as to whether it would be 'equally absurd' to make a demand on the *servicer* to sue the trustee on behalf of the trust for failing to take action against the servicer." *Bakal v. U.S. Bank Nat'l Ass'n*, 747 F. App'x 32, 38 (2d Cir. 2019) (summary order). This Court has yet to resolve this question or otherwise discuss how narrowly or broadly our holding in *Cruden* should be read.

In the case before us, the following seventeen No Action Trusts are at issue:

- Nine No Action Trusts[16] provided for notice to the trustee *and* the trust administrator, but the trust administrator, Citibank N.A., was affiliated with a breaching seller, Citigroup Global Markets Realty Corp.

- Another No Action Trust[17] provided for notice to the trust administrator, but the trust administrator, Wells Fargo, was a breaching servicer.

---

[16] CMLTI 2005-HE3; 2005-HE4; 2006-NC2; 2006-WFHE2; 2006-WFHE3; 2006-WFHE4; 2007-AMC2; 2007-WFHE1; and 2007-WFHE2. *See* Joint App'x at 77.

[17] CSAB 2006-4. *See* Joint App'x at 77–78.

- Six No Action Trusts[18] provided for notice to the securities administrator, but the securities administrators had conflicts of interest: Litton Loan Servicing LP and JPMorgan Chase Bank were breaching servicers, and The Bank of New York was a trustee accused of similar wrongdoing in other cases.[19]

- The final No Action Trust[20] provided for notice to the trustee *or* the trust administrator, but the trust administrator, Wells Fargo Bank N.A., was a breaching servicer.

Thus, this case requires us to answer the question *Cruden* left open. Here, Commerzbank sued only the trustee, USB, and not the additional or substitute notice parties (or the breaching parties with whom they are affiliated); therefore, unlike in *Cruden*, Commerzbank would not be demanding the additional or substitute notice parties to sue themselves.

But the rationale underlying *Cruden* was that it would be futile to condition the right to sue on a demand to a party who is directly implicated in the

---

[18] JPMAC 2005-FRE1; 2005-WMC1; 2006-CH1; 2006-CH2; 2006-CW2; 2006-NC2. *See* Joint App'x at 78.
[19] *See, e.g., Royal Park Invs. SA/NV v. Bank of N.Y. Mellon*, No. 14-cv-6502 (S.D.N.Y. Aug. 14, 2014); *Blackrock Allocation Target Shares: Series S Portfolio v. Bank of N.Y. Mellon*, No. 14-cv-9372 (S.D.N.Y. Nov. 24, 2014); *Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, No. 14-cv-10104 (S.D.N.Y. Dec. 23, 2014).
[20] MARM 2007-HF2. *See* Joint App'x at 79.

wrongdoing. That logic applies with similar force to *other* deal parties who present sufficient conflicts of interests such that requiring pre-suit demands of such parties would be as futile an application of the No Action Clauses as demanding that trustees sue themselves. For example, some deal parties may be directly implicated in the wrongdoing such that it would be futile to demand that these parties bring claims involving their *own* misconduct. Other deal parties may not be directly involved in the misconduct but could labor under other conflicts of interest, for example, close relationships with the breaching entities, such that requiring pre-suit demands would be futile and cause unnecessary delay since it would be improbable that they would take any action. In other words, there may be situations involving other entities who have conflicts of interest that raise the same impracticality concerns that the *Cruden* Court sought to avoid.

Accordingly, the logic of *Cruden* compels the conclusion that a plaintiff's failure to make pre-suit demands on parties other than trustees can be excused in certain circumstances where these parties are sufficiently conflicted. Our holding today, however, is not a blanket extension of *Cruden* to allow *any* suits against trustees by absolving plaintiffs of the obligations set forth in No Action Clauses. Rather, courts determining whether a No Action Clause requires pre-suit demands

21

on other deal parties should consider whether such requirements would entail potential conflicts of interest on the demanded party, and if so, whether the nature and extent of the conflicts would indicate that these parties would be sufficiently unlikely to bring claims if asked to do so, such that the demand would be futile.

As to the additional or substitute notice parties here, we remand for the district court to decide upon closer inspection whether these parties are sufficiently conflicted such that making a demand of them would be as futile an application of the No Action Clauses as demanding that trustees sue themselves. We note that the district court need only make this determination for some of the No Action Trusts, as our forthcoming disposition of the claims involving the German and Sold Certificates dismisses the claims based on some of the certificates originating in trusts that include No Action Clauses.  Specifically, the district court need only reach this issue for two types of alleged conflicts: (1) PSAs where the trust administrator, Citibank, N.A., was affiliated with a breaching seller, Citigroup Global Markets Realty Corp.; and (2) PSAs where securities administrators, Litton Loan Servicing LP and JPMorgan Chase Bank, were breaching servicers or The Bank of New York was both a securities administrator and trustee accused of similar wrongdoing in other cases.  Having concluded that

the court erred in dismissing and granting judgment as to Commerzbank's claims as to the No Action Trusts, we vacate and remand accordingly.

### B. Commerzbank's German Certificate Claims Are Untimely.

As to the issue of the timeliness of Commerzbank's German Certificate claims, we affirm the district court's orders. Commerzbank's timeliness challenge is implicated in two district court orders—the Reopen Order and the April 2020 Summary Judgment Order.

This challenge requires us to consider: first, whether the district court abused its discretion by denying as untimely a motion to reopen the case and a motion for reconsideration filed on the basis of an intervening change in law that occurred beyond the filing deadline; second, whether the district court's use of the German statute of limitations, as opposed to another statute, was proper; and finally, whether the district court properly applied the German statute of limitations.[21]

---

[21] We address the Reopen Order before addressing the underlying April 2020 Summary Judgment Order because if the district court erred by not considering the change in law, then it is unnecessary for us to consider the summary judgment order which relied on the prior law. But if the district court did not err in denying the motion to reopen, then we can appropriately consider the district court's summary judgment order based on the prior law.

As discussed previously, we review de novo a district court's grant of a motion for summary judgment. *See supra* p. 17. We construe Commerzbank's motion to reopen the case as a motion for reconsideration under Federal Rule of Civil Procedure 60(b)(6), which allows courts to "relieve a party . . . from a[n] . . . order" in the event of "any . . . reason that justifies relief." We review the denial of a motion for reconsideration and Rule 54(b) motion for abuse of discretion. *Olson v. Major League Baseball*, 29 F.4th 59, 72 (2d Cir. 2022) ("[W]e generally review the denial of a reconsideration motion under Federal Rule[] of Civil Procedure . . . 60(b) for abuse of discretion."); *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) ("We review for abuse of discretion a district court's denial of [a] Rule 54(b) motion . . . .").

1. <u>The District Court Did Not Abuse Its Discretion By Finding That Commerzbank's Motion to Reopen the Case and Motion for Reconsideration Were Untimely.</u>

A district court abuses its discretion when its decision: (1) "rests on an error of law or a clearly erroneous factual finding"; or (2) "cannot be found within the range of permissible decisions." *Johnson v. Univ. of Rochester Med. Ctr.*, 642 F.3d 121, 125 (2d Cir. 2011). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need

24

to correct a clear error or prevent manifest injustice."  *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks and citation omitted).  Accordingly, the standard for granting a motion for reconsideration is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

> *a. The Local Rule 6.3 Deadline to File a Motion for Reconsideration Based on an Intervening Change of Law Outside of the Deadline Runs From the Date the Change Occurred.*

The Southern District of New York's Local Rule 6.3 permits a party to move for reconsideration based on "matters or controlling decisions which counsel believes the [district court] has overlooked."  S.D.N.Y. L.R. 6.3; *see also* Fed. R. Civ. P. 60(b)(1) (permitting a district court to grant relief from a judgment based on "mistake, inadvertence, surprise, or excusable neglect"); Fed. R. Civ. P. 54(b) (when an action presents more than one claim for relief, unless expressly provided by the district court, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all

25

the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities").

Local Rule 6.3 requires any notice of a motion for reconsideration to be filed and served within fourteen days after entry of the challenged order or judgment. S.D.N.Y. L.R. 6.3. The district court generally "has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001), *abrogated in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009); *see Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1048 (2d Cir. 1991) ("[T]he district court has the inherent power to decide when a departure from its Local Rules should be excused or overlooked."), *superseded by rule on other grounds*, Fed. R. Civ. P. 5(d)(4) & 83(a)(2).

We recognize that this Circuit has not specifically considered whether motions for reconsideration brought pursuant to an intervening change in law are subject to Rule 6.3's fourteen-day deadline. This case does not require a deep exposition of all possible scenarios in which this Circuit would excuse an untimely filing in light of an intervening change in law. For example, this case does not

require us to consider the timeliness of a motion for reconsideration based on a change in the law that occurs within Rule 6.3's fourteen-day window.[22]

We assume, for the sake of argument, that a motion for reconsideration based on a change in the law would not be untimely if the change occurs while the case is still being litigated and affects a prior ruling, and the reconsideration motion is made within fourteen days after the change in law or a reasonable time thereafter. We even assume, again for the sake of argument, that the fourteen-day period is tolled until the affected party learns, or reasonably should have learned, of the change in law, if the case is still pending. But even after making both of these assumptions in Commerzbank's favor, we conclude that the district court did not abuse its discretion in concluding that Commerzbank's motion was untimely. Although the Ohio legislature amended the borrowing statute in June

---

[22] Commerzbank argues that the fourteen-day deadline under Rule 6.3 cannot apply to a change in the law that occurs after that period expires and that the district court was wrong to suggest that it was obligated to move for reconsideration within fourteen days of the amendment. But as noted *infra*, although Commerzbank never disclosed to the district court the exact date on which it became aware of the change in Ohio law, it did represent that it discovered the amendment at some unspecified point during settlement discussions, and the district court emphasized that Commerzbank "admit[ted] that it did not advise opposing counsel or the Court at th[e] [time it allegedly discovered the amendment] of either the change in the law or its intention to move for reconsideration." Special App'x at 92. Since those settlement negotiations reached a successful conclusion on or about February 8, 2022, and Commerzbank moved to reopen on March 8, 2022, Commerzbank brought its motion at the earliest a month after it became aware of the change in law, and possibly later. *That* was the delay the district court found "inexcusable." *Id.* at 93.

2021, Commerzbank waited nearly *nine months* after the amendment to seek reconsideration of the district court's summary judgment order, which had been issued nearly two years prior.

Moreover, Commerzbank represented that it had discovered the amendment while the parties were engaged in settlement discussions which culminated in a settlement that was reported to the district court in early February 2022. Thus, Commerzbank moved for reconsideration more than fourteen days after both the change in law itself *and* after it allegedly discovered the change. Given the "broad discretion" afforded to district courts in enforcing compliance with local rules, *Holtz*, 258 F.3d at 73, and considering Commerzbank's delay in seeking reconsideration, we conclude that the district court did not abuse its discretion in denying Commerzbank's motion to reopen and, in effect, its motion for reconsideration.

> b. *The District Court Was Not Required to Revisit Its Prior Judgment Under Federal Rule of Civil Procedure 54(b).*

A court has the authority under Federal Rule of Civil Procedure 54(b) to reconsider a decision or order at any time before the entry of final judgment. Fed. R. Civ. P. 54(b).

28

But Rule 54(b) does not *require* district courts to revisit decisions upon request—it only provides that prior decisions "*may* be revised" prior to final judgment of all claims. *Id.* (emphasis added). In denying Commerzbank's motion to reopen, the district court recognized that Rule 54(b) granted the authority to alter its decision, but ultimately chose to "adopt and enforce" Local Rule 6.3's time limit on motions for reconsideration. Reopen Order at 9. We conclude that the district court's decision did not "rest on an error of law or a clearly erroneous factual finding," nor could it not "be found within the range of permissible decisions." *Johnson*, 642 F.3d at 125. Therefore, the district court did not abuse its discretion by declining to grant Commerzbank's motion under Rule 54(b).

2. The District Court Properly Concluded That Under the Ohio Borrowing Statute, It Was Required to Apply Germany's Statute of Limitations.

Commerzbank further argues, however, that even if the district court did not err in declining to revisit its earlier conclusion, the district court's conclusion that it was required to apply Germany's three-year statute of limitations under the Ohio borrowing statute was nonetheless erroneous. We disagree.

To determine which jurisdiction's statute of limitations applied, the district court engaged in a choice-of-law analysis, looking to Ohio law, as the case was

transferred from the Southern District of Ohio. *See Diffley v. Allied-Signal, Inc.*, 921 F.2d 421, 423 (2d Cir. 1990) ("In diversity cases, 'state statutes of limitations govern the timeliness of state law claims,' and state law 'determines the related questions of what events serve to commence an action and to toll the statute of limitations.'" (quoting *Personis v. Oiler*, 889 F.2d 424, 426 (2d Cir. 1989))). Ohio's borrowing statute, prior to the June 2021 amendment, required claims to be timely under both (1) Ohio's statute of limitations, which was then eight years for contract claims,[23] *and* (2) the limitations period of the jurisdiction where the claim accrued. Ohio Rev. Code Ann. § 2305.03(B); *see also Taylor v. First Resol. Inv. Corp.*, 72 N.E.3d 573, 585 (Ohio 2016) ("Ohio applies the statute of limitations of the state where the cause of action accrued in instances when that state's statute of limitations is shorter.").

In *Taylor*, the Ohio Supreme Court clarified that where an alleged injury is purely economic, courts look to "where the plaintiff resides and sustains the economic impact of the loss" to determine the jurisdiction where the claim accrued. 72 N.E.3d at 586–87 (quoting *Portfolio Recovery Assocs., LLC v. King*, 927

---

[23] The Ohio statute of limitations period for contract claims depends on which iteration of the statute applied at the relevant time. For the claims asserted here, the limitations period was eight years under the prior version of the statute. Ohio Rev. Code Ann. § 2305.06 (2012) (amended 2021).

N.E.2d 1059, 1061 (N.Y. 2010)).  Here, Commerzbank's German Certificate claims

accrued in Germany.  Although Commerzbank may have purchased the

certificates out of its London branch, Commerzbank is incorporated in Germany.

Commerzbank therefore "resides and sustain[ed] the economic impact of the loss"

from its claims in Germany.  *Id.*[24]  Accordingly, the German statute of limitations

period applies.

3.   <u>Under the German Statute of Limitations, Commerzbank's Claims Related to the German Certificates Were Untimely.</u>

Concluding that the district court properly identified the German statute of

limitations as the appropriate statute to apply under the Ohio borrowing statute,

---

[24] Commerzbank contends that the district court applied the wrong test under the borrowing statute and should have instead asked "which jurisdiction has the most significant relationship to the action."  Blue Br. 28–29; *see also* February 2021 Reconsideration Order at 9–10.  In its motion for reconsideration, Commerzbank suggested that the district court certify the question regarding which test courts should apply to the Supreme Court of Ohio.  The district court declined, explaining that *Taylor* had squarely decided the question and the cases cited by Commerzbank were not controlling.  "In certain domestic cases, where a federal court must decide an unsettled question of the law of a State, it is possible for that court to certify the question to the highest court of that State."  *Ins. Co. of Pa. v. Equitas Ins. Ltd.*, 68 F.4th 774, 791 n.8 (2d Cir. 2023).  This Court's Local Rules also provide that "[i]f state law permits, the court may certify a question of state law to that state's highest court."  2d Cir. L.R. 27.2(a).  Moreover, Ohio permits its Supreme Court to consider certified questions from a federal court if the federal court concludes that "there is a question of Ohio law that may be determinative of the proceedings and for which there is no controlling precedent in the decisions of the Supreme Court."  S. Ct. Prac. R. 9.01(A).

However, we determine there to be no basis for certification, as we agree with the district court that the Ohio Supreme Court squarely set forth in *Taylor* the standard for determining the jurisdiction whose statute of limitations should be borrowed under the Ohio borrowing statute, and Commerzbank has offered no controlling precedent to the contrary.  This Court is therefore bound to follow *Taylor*, which did not apply the most significant relationship test.  *See Fabozzi v. Lexington Ins. Co.*, 601 F.3d 88, 92 (2d Cir. 2010) ("Where lower state courts appear to have misconstrued or ignored binding precedent, [federal courts sitting in diversity] are obliged to follow the [decisions of the highest state court].").

we next consider whether the district court properly applied Germany's three-year

statute of limitations to determine that Commerzbank's German Certificate claims

were untimely. We conclude that it did.

Section 195 of the German Civil Code provides a three-year limitations

period. As both parties agree, Section 199 of the German Civil Code states that the

limitations period begins to run at the end of the calendar year in which: (1) the

claim arose; and (2) the plaintiff either has knowledge of the circumstances giving

rise to the claim and the identity of the defendant or would have had such

knowledge but for gross negligence. *See* Bürgerliches Gesetzbuch [BGB] [Civil

Code], § 199 (Ger.).

Both parties also agree that a plaintiff has knowledge of the circumstances

giving rise to the claim when the plaintiff obtains knowledge of the facts necessary

to commence an action in Germany with an "expectation of success" or "some

prospect of success," though not without risk and even if the prospects of success

are uncertain.[25] However, a plaintiff need not possess evidence sufficient to

---

[25] *See* Bundesgerichtshof [BGH] [Federal Court of Justice] Oct. 28, 2014, XI ZR 348/ 13, BeckRS 2014, 21090 ¶ 49 (Ger.); Bundesgerichtshof [BGH] [Federal Court of Justice] June 23, 2009, XI ZR 171/08, BKR 2009, 372, 374, ¶ 25; Bundesgerichtshof [BGH] [Federal Court of Justice] Sept. 23, 2008, XI ZR 395/07, NJW 2009, 587 ¶ 12; OLG Karlsruhe, Dec. 19, 2013, 17 U 271/12, BeckRS 2014, 01739 ¶ II.3.b; Bundesgerichtshof [BGH]

sustain its allegations, know every detail of its claim, or exclude every potential litigation risk. Bundesgerichtshof [BGH] [Federal Court of Justice] July 7, 2011, III ZR 90/10, NJOZ 2011, 2087 at 2089, ¶ 16. Under Germany's "principle of unity of damages," only a breach creating "new damages" is a separate breach for statute-of-limitation purposes—in other words, an ongoing breach neither restarts nor tolls the statute of limitations period. Joint App'x at 177.

Because Commerzbank filed its lawsuit in December 2015, the German statute of limitations would bar all German certificate claims if the claims arose, and Commerzbank had sufficient knowledge of each element of its claims, by December 2012. The district court determined in its April 2020 Summary Judgment Order that the claims arose and Commerzbank had sufficient knowledge by then and therefore that Commerzbank's claims were untimely. We agree.

---

[Federal Court of Justice] July 25, 2017, VI ZR 433/16, NJW 2017, 3510, 3513, ¶ 34; *see also IKB Deutsche Industriebank AG v. McGraw Hill Fin., Inc.*, 634 F. App'x 19, 22 (2d Cir. 2015) (summary order).

33

a. *Commerzbank's German Certificate Claims Arose Prior to 2012.*

In determining when the claim arose, we first consider what constitutes a breach under Commerzbank's theory of the case.

Under many of the PSAs at issue in this case, an EOD arises when a servicer commits a material breach, the trustee provides notice to the servicer of the breach, and the servicer fails to cure the breach within a designated period. *See, e.g.*, Joint App'x 524–27 (Section 7.01). Here, in its Amended Complaint, Commerzbank claims breach of contract by USB, which allegedly failed to fulfill its obligations to take steps to: cause the sponsors or originators to repurchase loans eligible for repurchase; investigate and give notice to all parties to the PSAs of the breach of representations and warranties relating to the mortgage loans; make prudent decisions concerning the exercise of appropriate remedies following EODs; provide notice of and take steps to remedy the servicers' failure to adhere to prudent servicing standards and otherwise perform their obligations under the PSAs; and enforce the repurchase obligations of the sponsors and/or originators. Amend. Compl. ¶ 157.

Commerzbank does not dispute that under its theory of the case, USB allegedly committed breaches prior to 2012. *See, e.g.*, Joint App'x at 2782–83 (USB

34

56.1 ¶¶ 204–05).[26]  The question here is whether USB engaged in later successive breaches that triggered new limitations periods for each breach, or if USB's post-2012 actions should be considered a part of one continuing breach.

But Commerzbank's own theory of the case rests on the allegation that USB "had a *continuing* duty to provide such notice but failed to do so throughout its tenure as trustee."  Amend. Compl. ¶ 91 (emphasis added).  Because all post-2011 "breaches" alleged by Commerzbank appear to arise under the same PSA duties that had been allegedly breached prior to 2012 for the same loans, they are not independent breaches causing new damages.  As such, USB's breaches are continuing breaches, and we conclude that the statute of limitations was triggered at the first breaches of obligation, all of which occurred prior to 2012.  Commerzbank's German Certificate claims therefore arose before 2012.

---

[26] For example, Commerzbank admits that USB sent letters to the Servicers in 2007, 2009, 2010, and 2011.  *See, e.g.*, Joint App'x at 2783–84 (USB 56.1 ¶ 205); *see also id.* ("In October 2007, U.S. Bank sent a series of notices to Servicers and Master Servicers addressing issues in their foreclosure practices that could affect the timing or cost associated with the disposition of any property." (internal quotation marks omitted)).  And by March 2008, USB had sent final certifications and exception reports identifying document defects related to 39 trusts.  *Id.* at 2744 (USB 56.1 ¶ 169).  Under the PSA, the failure to cure within a prescribed period resulted in an EOD, and the parties agree that cumulative loss EODs occurred in 2009 for multiple trusts.  *Id.* at 2847–48 (USB 56.1 ¶¶ 263–64).  Commerzbank's own Amended Complaint characterizes USB's breaches as "continuing," stating, "U.S. Bank had a *continuing* duty to enforce repurchase rights. . . . U.S. Bank *continually* failed to do so and let the statute of limitations to bring repurchase claims lapse by failing to take sufficient action within six years of the closing of each Covered Trust."  Amend. Compl. ¶ 99 (emphases added).

*b. Commerzbank Knew or Was Grossly Negligent in Not Knowing of the Circumstances Giving Rise to its German Certificate Claims.*

Next, we consider Commerzbank's knowledge—in other words, what Commerzbank knew about the circumstances giving rise to its claims and when. The district court, relying on other RMBS cases involving claims that accrued in Germany, recognized that the knowledge prong of the German statute of limitations looks to when the plaintiff had "knowledge of the factual circumstances" to commence an action against the defendant with an "expectation of success" or "some prospect of success." April 2020 Summary Judgment Order at 15 (quoting *Commerzbank AG v. Deutsche Bank Nat'l Tr. Co.*, 234 F. Supp. 3d 462, 472 (S.D.N.Y. 2017)). This definition of the knowledge prong is consistent with expert testimony in the record discussing the German statute of limitations, Joint App'x at 181 (Rohe Aff. ¶ 33), and the interpretation of the knowledge prong previously adopted by this Court, *IKB Deutsche Industriebank AG v. McGraw Hill Fin., Inc.*, 634 F. App'x 19, 22 (2d Cir. 2015) (summary order) (crediting expert testimony stating that, "under German law, a plaintiff has knowledge of the circumstances giving rise to the claim when she obtains knowledge of the facts necessary to commence an action in Germany with an 'expectation of success' or 'some prospect of success,' though not without risk and even if the prospects of

36

success are uncertain"). Under German law, plaintiffs who are sophisticated investors like Commerzbank have a heightened duty to investigate possible claims. Joint App'x at 189–90 (Roche Aff. ¶ 47).

Although, as Commerzbank claims, Germany's lack of a pretrial discovery process may have limited the opportunities for Commerzbank to gain knowledge of relevant facts giving rise to its claims, it in no way foreclosed those opportunities. Commerzbank could have obtained the requisite information through other avenues.

For example, under 28 U.S.C. § 1782, a party may request that a district court order that evidence be produced for proceedings before a foreign tribunal. *See* 28 U.S.C. § 1782(a) ("The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . ."); *see also In re Porsche Automobil Holding SE*, No. 15-mc-417, 2016 WL 702327, at *1 (S.D.N.Y. Feb. 18, 2016) (considering application under 28 U.S.C. § 1782 by litigant in foreign proceeding "seek[ing] to obtain evidence from persons who are found or reside in the United States for use in the foreign tribunal").

Further, the record overwhelmingly shows that Commerzbank was aware of performance issues related to the trusts and of potential causes for those issues by 2011.[27] Monthly remittance reports were available to investors every month and contained detailed information about certificates issued by the relevant trust. *See* Joint App'x at 192 (Rohe Aff. ¶ 56). That report specifically included information about the number of loans that were delinquent or in default, had been foreclosed upon, or had been repurchased or substituted. *Id.* The record evidence also shows that the rating agencies had downgraded each of the certificates to well below investment grade by the end of 2011. Moreover, Commerzbank admitted in its Amended Complaint that it began selling certificates as early as November 2011 when "it was apparent that Defendants had breached their duties and would not take steps to remedy their failures." Amend. Compl. ¶ 140. These circumstances triggered a duty for Commerzbank, as a sophisticated party, to investigate potential claims against USB.

Finally, publicly available information supports this conclusion. By 2011, there were several other RMBS investor suits against trustees for the same types

---

[27] The Court notes that Commerzbank conceded in an earlier action that relevant "forensic loan level analysis was available in 2010 and 2011." *Commerzbank AG London Branch v. UBS AG*, No. 654464/2013, 2015 WL 3857321, at *3 (N.Y. Sup. Ct. June 17, 2015).

of allegations set forth in Commerzbank's Amended Complaint, with news outlets reporting on these cases.

Based on the evidence before it, and even viewing the evidence presented in a light most favorable to Commerzbank, we conclude that Commerzbank knew or was grossly negligent in not knowing of the circumstances giving rise to its German Certificate claims. Therefore, we conclude that the district court did not err in concluding that Commerzbank's German Certificate claims were barred by the German statute of limitations. As such, we affirm the grant of judgment as to Commerzbank's claims related to the German Certificates.[28]

## C. Commerzbank Cannot Bring Claims Related to the Sold Certificates.

Finally, we conclude that Commerzbank cannot bring claims related to the Sold Certificates and affirm the district court's order as to those claims.[29] Commerzbank's challenge is implicated in the district court's April 2020 Summary

---

[28] We note that Commerzbank also challenges the district court's grant of judgment as to its claims arising under the Duke Repo Certificates, on the same grounds as it bases its arguments regarding the Sold Certificates. However, there appears to be complete overlap between the Duke Repo Certificates and the German Certificates—in other words, all the Duke Repo Certificates (*i.e.*, certificates sold in a third-party repo transaction) are also German Certificates (*i.e.*, certificates held by Commerzbank through German entities). Thus, we need not separately consider Commerzbank's challenge of the district court's grant of judgment as to its Duke Repo Certificate claims.

[29] We recognize a substantial overlap between the Sold Certificates and German Certificates. Following the grant of judgment as to Commerzbank's German Certificate claims, the following Sold Certificates remain at issue: CMLTI 2006-WFHE4, M1; CSAB 2006-4, A6A; HEAT 2005-9, M2; JPALT 2006-A6, 2A8; MSM 2006-15XS, A3.

Judgment Order, in which the district court concluded that Commerzbank could not bring its Sold Certificates claims.[30] April 2020 Summary Judgment Order at 7–10 at 30–33. As discussed previously, we review de novo a district court's grant of a motion for summary judgment. *See supra* p. 17.

Commerzbank does not dispute that it sold the Sold Certificates to third parties. Whether Commerzbank has a cause of action, however, depends on whether Commerzbank retained rights to the claims for breaches that occurred while it held the Sold Certificates even after it sold the Sold Certificates. If it did not, then it lacks the ability to pursue claims based on the Sold Certificates because those claims were transferred to the assignees of the certificates. *See W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008) (stating that a "plaintiff [must] have legal title to, or a proprietary interest in, the claim"); *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016)

---

[30] Although the district court characterized this issue as "standing," that is somewhat of a misnomer because it appears to confuse whether Commerzbank states an actionable claim with the question of Article III standing. Although previously courts have described this issue as involving "prudential standing" or "statutory standing," we have clarified that this does not present a "standing issue, but simply a question of whether the particular plaintiff 'has a cause of action.'" *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127–28 (2014)). In other words, "this inquiry 'does not belong' to the family of standing inquiries . . . because 'the absence of a valid . . . cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case.'" *Id.* (quoting *Lexmark*, 572 U.S. at 128 n.4). Thus, we describe this issue as concerning whether Commerzbank can bring a cause of action related to the Sold Certificates, not whether Commerzbank has standing.

("[A] plaintiff must have a cause of action under the applicable statute."). Whether Commerzbank did retain such rights depends on which jurisdiction's law applies to the transfer.

        1. <u>If New York Law Applies, Commerzbank Cannot Bring Claims Related to the Sold Certificates.</u>

The parties do not dispute that if New York law applies, Commerzbank cannot bring claims with respect to the Sold Certificates. Under New York law, such a transfer "shall vest in the transferee all claims or demands of the transferrer," and only those claims "expressly reserved in writing" are exempted. *See* N.Y. Gen. Oblig. Law § 13-107(1). Here, the transfer of Commerzbank's Sold Certificates automatically vested in the transferees all of Commerzbank's claims related to the Sold Certificates. And the parties agree that Commerzbank did not expressly reserve its litigation rights. As a result, if New York law applies, the district court properly dismissed Commerzbank's Sold Certificates claims.

        2. <u>Ohio Law Weighs in Favor of Applying New York Law.</u>

We must therefore determine whether the district court properly concluded that New York law, not English law, governs whether Commerzbank retained the rights to its claims in the transfer.

41

Because the instant case was transferred from the Southern District of Ohio, we apply Ohio choice-of-law principles. Ohio applies the Restatement of Law 2d, Conflict of Laws to determine proper jurisdiction. *Am. Interstate Ins. Co. v. G & H Serv. Ctr. Inc.*, 861 N.E.2d 524, 527 (Ohio 2007) (recognizing that Ohio has "adopted the Restatement [(Second) of Conflict of Laws] in its entirety"); *see also Morgan v. Biro Mfg. Co., Inc.*, 474 N.E.2d 286, 288–89 (Ohio 1984) (adopting "the Restatement [(Second)] of the Law of Conflicts, as it is more reflective of our past decisions and also provides sufficient guidelines for future litigation").

Under the Restatement, "[i]ssues in contract are determined by the law chosen by the parties in accordance with the rule of § 187 and otherwise by the law selected in accordance with the rule of § 188." Restatement (Second) of Conflict of Laws § 186 (1971). Thus, § 188 of the Restatement applies when, as here, the parties have not preemptively designated a choice of applicable law. *Id.* § 188(2). Under § 188, courts consider which jurisdiction has the most significant relationship to the transaction and the parties. *Id.* § 188(1). For contract claims, the relevant factors are: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation, and place of

42

business of the parties.  *Gries Sports Enterprises, Inc. v. Modell*, 473 N.E.2d 807, 810 (Ohio 1984) (quoting Restatement (Second) of Conflict of Laws § 188(1)).

> ### a.  *Place of Negotiations and Contracting Weighs in Favor of Applying English Law.*

Commerzbank asserts—and USB does not appear to dispute—that the contracts to sell the Sold Certificates were negotiated and made in England.  USB contends that Commerzbank "overstates the 'negotiation' and 'contracting' in England," noting that Commerzbank's London employees only sent "a few emails" in the process of negotiating and finalizing the contracts.  Appellee's Br. at 43.   Nevertheless, given that USB does not persuasively argue that the certificates were negotiated or contracted for anywhere *other than* London, the place of negotiations and contracting factors weigh in favor of applying English law, regardless of whether the negotiations were extensive or brief.

> ### b.  *Place of Performance Weighs in Favor of Applying New York Law.*

Neither party appears to dispute that the contracts were performed in New York, as that is where the transfers and payments occurred; Commerzbank appears to argue only that the place of performance factor should be afforded less weight.  As discussed previously, the Sold Certificates were always housed with

the DTC in New York. And as a Custodian, DTC transfers the certificates to the new certificateholders through its office in New York.

Moreover, the transfers were governed by New York law. First, the PSAs for the Sold Certificates are all governed by New York law (aside from one, which was governed by Delaware law; none were governed by English law). The PSAs for the Sold Certificates also provide that transfers of the Sold Certificates would be made according to DTC's applicable rules or procedures. The legal bases for the DTC's activities are found in New York law and federal securities law. Joint App'x at 855; *see also id.* at 842 ("DTC is a limited purpose trust company, formed under the Banking Law of New York state and supervised by the New York State Department of Financial Services, a State member bank of the Federal Reserve System . . . subject to examination by the Federal Reserve Bank of New York . . . ."); *id.* at 853 ("The relevant jurisdictions for all material aspects of DTC's activities are the United States and New York."). The PSAs provide that, upon the close of a transaction, payments are wired to and from the DTC, and issues regarding the finality of the transaction are governed by New York law:

> **These provisions with respect to the finality of transactions processed through the DTC system are enforceable under general New York contract law, the New York UCC and the Exchange Act**, and are protected in the event of the insolvency of a Participant (with

44

limited exceptions) by relevant provisions of FDIA, FDIC IA, the Bankruptcy Code, SIPA and Title II of Dodd Frank.

*Id.* at 857 (emphasis added). The transactions therefore occur in and are governed by the laws of New York. As a result, the place of performance factor weighs in favor of applying New York law.

### c. *Location of the Subject Matter of the Contract Weighs in Favor of Applying New York Law.*

With respect to the subject matter of the contract, the PSAs and offering documents for the Sold Certificates state that the certificates shall be held at the DTC, in New York. Joint App'x at 863 ("The initial Depository shall be The Depository Trust Company, the nominee of which is Cede & Co., as the registered Holder of the Book-Entry Certificates."). The governing documents assert that "[t]he Depository shall at all times be a 'clearing corporation' as defined in Section 8-102(a)(5) of the Uniform Commercial Code of the State of New York" and that the DTC, located in New York—not the London branch of Commerzbank—would hold and execute the actual transfer of the Sold Certificates. *Id.* Thus, this factor also weighs in favor of applying New York law.

> *d. Domicile, Residence, Nationality, Place of Incorporation, and Place of Business of the Parties Weigh in Favor of Applying New York Law.*

With respect to the last Restatement factor—domicile, residence, nationality, place of incorporation, and place of business of the parties—multiple locations are implicated. Although, as discussed previously, the London branch of Commerzbank conducted the sales, Commerzbank itself is incorporated in Germany. However, the principal place of business of seven of the eleven counterparties was New York.[31] Given that a majority of the counterparties have this connection to New York and that there is little information about the other counterparties in the record, including whether any have their principal place of business or are incorporated in England, this last factor weighs in favor of New York.

On balance, we conclude that New York has the most significant relationship to the transactions at issue. Therefore, New York law governs

---

[31] The following counterparties purchased the Sold Certificates: (1) J.P. Morgan Chase Bank (principal place of business in New York); (2) Citigroup Global Markets Inc. (principal place of business and incorporated in New York); (3) Credit Suisse Securities (principal place of business in New York); (4) Barclays Capital Inc. (principal place of business in New York); (5) Morgan Stanley & Co. Inc. (principal place of business in New York); (6) Nomura International PLC; (7) KGS Alpha Capital Markets; (8) Merrill Lynch International; (9) G2 Capital Markets (principal place of business in New York); (10) Goldman Sachs International; and (11) Raymond James (principal place of business in New York).

whether Commerzbank retained its right to bring claims associated with the Sold Certificates.

And, as a result, Commerzbank cannot bring its claims related to the Sold Certificates. As discussed previously, the certificates issued for the trusts relevant to the merits dispute fall into the category of either German Certificates or Sold Certificates. Because we have found that Commerzbank's German Certificate claims are untimely and that Commerzbank cannot bring its Sold Certificate claims—therefore affirming the district court's grant of judgment as to these claims—we need not consider Commerzbank's merits argument.[32]

## VI. Conclusion

In light of the foregoing, we affirm the district court's orders in all but one respect—the dismissal of and grant of judgment as to Commerzbank's claims related to trusts with No Action Clauses, which we vacate—and remand for proceedings consistent with this opinion.

---

[32] We further note that although there is overlap between the merits-related trusts and the German and Sold Certificates, no such overlap appears to exist with the No Action Trusts. As a result, our decision to vacate the district court's dismissal of and grant of judgment as to Commerzbank's No Action Trust claims has no bearing on the merits issue.