08-4815-cr
United States v. Deandrade

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2009

(Submitted: December 7, 2009    Decided: March 12, 2010)

Docket No. 08-4815-cr

- - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

                Appellee,

      - v.-

DANIEL DEANDRADE,

                Defendant-Appellant.

- - - - - - - - - - - - - - - - - - - -x

Before:         JACOBS, Chief Judge, HALL, Circuit Judge, and MURTHA, District Judge.[*]

Appeal from a judgment of conviction, entered in the United States District Court for the Southern District of New York (Sand, J.), on the grounds (1) that the district court improperly denied defendant's two motions for a mistrial after reference was made to his incarceration

---

[*] J. Garvan Murtha, Senior Judge of the United States District Court for the District of Vermont, sitting by designation.

during trial and (2) that the sentence took account of a non-jury juvenile conviction, in violation of Apprendi v. New Jersey, 530 U.S. 466 (2000).  We affirm both the conviction and the sentence.

Arza Feldman, Feldman and Feldman, Uniondale, New York, for Appellant.

Preet Bharara, John T. Zach, Julian J. Moore, and Iris Lan, United States Attorney's Office of the Southern District of New York, New York, New York, for Appellee.

DENNIS JACOBS, Chief Judge:

Defendant-Appellant Daniel Deandrade appeals from a judgment, entered following a 2008 jury trial in the United States District Court for the Southern District of New York (Sand, J.), convicting him of two felony narcotics offenses and sentencing him to two concurrent terms of 300 months' imprisonment.  He appeals principally on the grounds that (1) references to his incarceration during trial, made by two cooperating witnesses, impaired the presumption of innocence, and that the district court should have granted his motions for a mistrial premised on Estelle v. Williams, 425 U.S. 501 (1976); and (2) the sentence improperly took

2

account of a non-jury juvenile conviction in violation of Apprendi v. New Jersey, 530 U.S. 466 (2000). Deandrade also raises a variety of other challenges, including ineffective assistance of counsel. We affirm the conviction and the sentence.

**I**

On January 8, 2008, the government filed a two-count indictment in connection with Deandrade's involvement in two drug distribution rings between 1999 and 2006, one in the Bronx, the other in Utica, New York. Count One charged conspiracy to distribute and to possess with intent to distribute 50 grams or more of cocaine base ("crack"), in violation of 21 U.S.C. § 846. Count Two charged distribution and possession with intent to distribute 50 grams or more of crack, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A).

Pre-trial, the government filed a prior felony information specifying that in December 1990 Deandrade was convicted in Bronx County Family Court of the felony offense of attempted criminal sale of a controlled substance in the fifth degree. The government introduced this juvenile drug

3

offense because, under federal law, a second felony drug conviction triggers a mandatory minimum sentence of 20 years (with a maximum of life imprisonment).  See 21 U.S.C. § 841(b)(1)(A).  Deandrade's competing characterization of that proceeding is that he was "adjudicated a juvenile delinquent."

The government's case consisted of Deandrade's own post-arrest statement and the testimony of three cooperating witnesses.  During the government's examination of two of these witnesses, testimony was elicited (perhaps inadvertently) that Deandrade was incarcerated during the trial.  Both times, Deandrade objected and moved for a mistrial, the court denied the motions, and the prosecutor shifted the questioning to a different topic.  The government did not later reference this evidence during the trial.

The jury convicted Deandrade of both counts on April 17, 2008.  Before sentencing, the Probation Office submitted a Pre-Sentence Report that calculated a Guideline Sentence of 360 months to life imprisonment and recommended a sentence of 360 months.  On September 25, 2008, the district court sentenced Deandrade to two concurrent terms of 300

4

months' imprisonment.

On appeal, Deandrade submitted a counseled and a pro se brief, each of which contests his conviction and his sentence. As to his conviction, Deandrade argues that the challenged testimony violated his right to be presumed innocent, that the jury may have inferred that he was incarcerated during trial because he was particularly dangerous or a flight risk, that the district court therefore abused its discretion in denying his motions for a mistrial, and that the district court should have issued a curative instruction--notwithstanding that he did not ask for one. As to his sentence, Deandrade argues, *first*, that his December 1990 juvenile adjudication is not a "prior conviction" for purposes of 21 U.S.C. § 841(b)(1)(A); and *second*, that, in any event, using his prior juvenile adjudication to enhance his sentence violates Apprendi, 530 U.S. 466, because he had no right to a jury trial in that adjudication. His pro se brief raises several other arguments challenging both his conviction and sentence.

**II**

Deandrade cites two instances in which the government

elicited testimony from its cooperating witnesses that Deandrade was incarcerated during trial.  The first occurred during the examination of Ian Martin:

AUSA: When was the last time you spoke with the defendant?

Martin: On the bus yesterday.

. . .

AUSA: When you say on the bus yesterday, explain that.

Martin: He just asked me what was going on.

AUSA: That's the bus from where to where?

Martin: *From MDC to the courthouse.*

AUSA: Did you discuss your testimony today with the defendant?

Martin: No.

AUSA: How would you describe your relationship with the defendant at the time you were dealing drugs with him?

Martin: We were good friends.

(emphasis added).  In denying Deandrade's motion for a mistrial, the court acknowledged that it was "unfortunate that it came out the way it did," but concluded that it was "appropriate for the government to seek to establish that there had been some contact and some communication to negate any suggestion of any greater contact and I think it's a

6

relatively minor pleading matter and doesn't warrant a mistrial."

The second instance came during the government's examination of Daniel Macias:

> AUSA: Did you discuss the defendant's case with Mr. [Ian] Martin?
>
> Macias: Daniel Deandrade?
>
> AUSA: Right.
>
> Macias: *At the time I don't believe Daniel was in.*
>
> AUSA: Can you tell us how the Utica drug business operated?
>
> Macias: Utica was split into two sections. . . .

(emphasis added). Again, Deandrade moved for a mistrial, and again the motion was denied.

**B**

We review the denial of a motion for a mistrial for abuse of discretion. United States v. Carson, 52 F.3d 1173, 1188 (2d Cir. 1995).

"The presumption of innocence . . . is a basic component of a fair trial under our system of criminal justice." Estelle, 425 U.S. at 503; see also Coffin v. United States, 156 U.S. 432, 453 (1895). Accordingly,

7

"courts must be alert to factors that may undermine the fairness of the fact-finding process." Estelle, 425 U.S. at 503. We must consider "the likely effects [on the presumption] of a particular procedure, based on reason, principle, and common human experience." Id. at 504. It follows, for example, that a defendant typically cannot be "compelled to go to trial in prison or jail clothing because of the possible impairment of the presumption so basic to the adversary system"; such clothing would provide the jury a "constant reminder of the accused's condition" and would likely constitute "a continuing influence throughout the trial. . . ." Id. at 504-05.[2]

This Court has applied Estelle and its principles in several cases that are factually distinguishable from this appeal. See, e.g., United States v. Gaines, 457 F.3d 238, 246 (2d Cir. 2006) (vacating a conviction because the jury instructions allowed consideration of the defendant's interest in the outcome of the case and the resulting motive to testify falsely); United States v. Oshatz, 912 F.2d 534, 539 (2d Cir. 1990) (prohibiting guilt-assuming

_____

[2] Deandrade wore civilian clothes while in the courtroom during trial.

8

hypotheticals); <u>United States v. Thomas</u>, 757 F.2d 1359, 1363-65 (2d Cir. 1985) (holding that the practice of impaneling an anonymous jury does not violate the presumption of innocence).  Several circuits, however, have applied <u>Estelle</u> on facts that are more analogous to this case; and the rule that emerges is that brief and fleeting references are generally allowed, but extended comment is impermissible.  <u>See, e.g.</u>, <u>United States v. Washington</u>, 462 F.3d 1124, 1136-39 (9th Cir. 2006) (finding no plain error in failure to grant a mistrial in part because "referring to a defendant's incarceration is not constant as it is with prison garb"); <u>United States v. Atencio</u>, 435 F.3d 1222, 1237 (10th Cir. 2006) (finding no violation in part because the prosecutor made only an isolated comment that the defendant was incarcerated pre-trial); <u>United States v. Villabona-Garnica</u>, 63 F.3d 1051, 1058 (11th Cir. 1995) (same); <u>United States v. Jackson</u>, 549 F.2d 517, 527 n.9 (8th Cir. 1977) (finding no violation where a juror's glimpse of the defendant in prison clothes was fleeting); <u>see also</u> <u>Estelle</u>, 425 U.S. at 504-05 (expressing concern over practices that impair the presumption of innocence by constituting a "continuing influence throughout the trial" and a "constant

reminder of the accused's condition").

We adopt that approach, and hold that a brief and fleeting comment on the defendant's incarceration during trial, without more, does not impair the presumption of innocence to such an extent that a mistrial is required. Accordingly, the district court did not abuse its discretion in denying Deandrade's motions for a mistrial. The two instances in which the government witnesses commented on Deandrade's incarceration during trial were isolated, apparently unintentional on the part of the prosecution,[3] and incidental to legitimate areas of inquiry; moreover, notwithstanding the several comments comprising the first instance, the government never referenced them thereafter. See United States v. Castano, 999 F.2d 615, 618 (2d Cir. 1993) (concluding that it was "extremely unlikely" that improperly admitted evidence contributed to the guilty verdict because "[t]he introduction of the evidence was inadvertent [and] . . . the prosecution did nothing to emphasize the statements at the time they were made, and

---

[3] The government argues that it did not seek to elicit the fact that Deandrade was incarcerated during trial. That is persuasive as to the second instance, and plausible as to the first.

10

never referred to them thereafter").

## C

Deandrade also contends that the district court erred in failing to issue a curative instruction prohibiting consideration of the challenged testimony.  It is unclear whether Deandrade intends this argument to stand alone as a ground for vacatur, or whether it is part of his mistrial claim.  Either way, Deandrade never requested a curative instruction, and we therefore review his claim for plain error.  See United States v. Perrone, 936 F.2d 1403, 1413 (2d Cir. 1991).  Plain error review allows (but does not require) vacatur if the defendant proves: (1) error; (2) that is "clear or obvious, rather than subject to reasonable dispute"; (3) that affected substantial rights, "which in the ordinary case means . . . that it affected the outcome of the district court proceedings"; and (4) that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."  Puckett v. United States, 129 S. Ct. 1423, 1429 (2009) (internal quotation marks and citations omitted).  Plain error review is "strictly circumscribed" and "[m]eeting all four prongs is difficult, as it should

11

be." Id. at 1428, 1429 (internal quotation marks and citations omitted).

"Defense counsel's failure to request specific instructions may be overlooked where the prosecutor's misconduct is so prejudicial that no instruction could mitigate its effects"; but "in less egregious cases, the failure to request specific instructions before the jury retires will limit the defense's ability to complain about the relative lack of curative measures for the first time on appeal." United States v. Melendez, 57 F.3d 238, 242 (2d Cir. 1995). This is one of those "less egregious cases." The government never relied upon the challenged testimony, and a curative instruction could easily have done more harm than good by focusing the jurors on two allusive references that they otherwise might have missed or construed as innocuous.

Deandrade cites only United States v. Nixon, 779 F.2d 126, 133 (2d Cir. 1985); but Nixon does not address whether a court commits plain error in failing to issue a curative instruction sua sponte, and it is therefore of limited utility to Deandrade. Accordingly, we affirm the convictions.

12

**III**

In imposing the sentence of two concurrent terms of 300 months' imprisonment, the district court determined that Deandrade's drug-related juvenile adjudication constituted a "prior conviction" that triggered the 20-year mandatory minimum under 21 U.S.C. § 841(b)(1)(A), and that Apprendi, 530 U.S. 466, was satisfied notwithstanding that Deandrade was not afforded the right to a jury trial in the juvenile proceeding. On appeal, Deandrade challenges both determinations. We do not consider the merits of these arguments, however, because it is clear that the sentence was unaffected by Deandrade's juvenile drug offense. See Williams v. United States, 503 U.S. 193, 203 (1992) (remand is inappropriate where "the error did not affect the district court's selection of the sentence imposed").

The Guidelines sentence, correctly calculated by the court, was 360 months to life--*independent of any consideration of the contested juvenile adjudication*. More specifically, his base offense level was 38 (because 344 kilograms of crack were attributed to him), and he suffered a four-level enhancement for being the leader of a drug

13

distribution operation.  See U.S. Sentencing Guidelines Manual §§ 2D1.1(c)(1), 3B1.1(a).  The combined offense level of 42 called for a recommended Guideline sentence of 360 months to life.  See id. at the Sentencing Table.  The 300-month sentence actually imposed exceeded (by 60 months) the 20-year mandatory minimum prescribed by § 841(b)(1)(A).  It is hard to see how any consideration of the juvenile adjudication--which mattered *only* as to that mandatory minimum--contributed to the sentence imposed.  The district court made clear that it did not:

> I find that defendant would be subject to a 20-year mandatory minimum *if that [juvenile drug offense] became a basis for the sentence. . . . *The presentence report lists the guidelines as being 20 years to life, puts the floor at 20 because it proceeds on the correct assumption that there is a 20-year mandatory sentence here.  I note, however, that the sentence is greater than 20 years *without regard to the mandatory minimum, that all that I say on that subject, and I've said in the opinion which I've handed out, may be regarded as dictum*.

(emphasis added).  It cannot matter whether the court's dicta was sound, and we neither endorse nor reject it.[4]  We

---

[4] We note, without comment, that on similar facts the Third Circuit has reached a different conclusion.  See United States v. Huggins, 467 F.3d 359, 361 (3d Cir. 2006) (holding that a prior adjudication of delinquency may not be counted as a conviction under 21 U.S.C. § 841(b)(1)(B) because, unlike the Armed Criminal Career Act, Congress did

14

are satisfied that this consideration had no influence on the sentence that was imposed.

For these reasons, we affirm the sentence.

**IV**

Deandrade's pro se supplemental brief raises the following claims: (1) the government lacked probable cause for his arrest; (2) his post-arrest statement upon which the government relied at trial should have been suppressed as fruit of the poisonous tree; (3) the government perpetrated a fraud on the court by falsifying documents; (4) the government offered insufficient evidence on which to sustain a conviction on either count; (5) the government offered insufficient evidence that he was a leader of the drug organization (for sentence-enhancement purposes); and (6) his lawyer provided him constitutionally ineffective assistance. We dismiss the ineffective assistance claim without prejudice to it being raised in a future habeas corpus petition. See United States v. Morris, 350 F.3d 32, 39 (2d Cir. 2003). We reject the remaining assignments of

not include a specific provision that a delinquency adjudication should be considered a criminal conviction).

15

error as conclusory and, in any event, without merit.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.