20-3630
*United States v. Jefferys*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.   WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").   A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of October, two thousand twenty-two.

PRESENT:
>  JON O. NEWMAN
>  JOHN M. WALKER, JR.,
>  EUNICE C. LEE,
>    *Circuit Judges*.

---

UNITED STATES OF AMERICA,

>  *Appellee*,

>  v.                                                          No. 20-3630

DEVONE JEFFERYS, AKA MONEYBAGS,

>  *Defendant-Appellant*.

---

For Defendant-Appellant:          JILLIAN S. HARRINGTON, Law Office of Jillian S. Harrington, Monroe Township, New Jersey.

For Appellee:                     SARITHA KOMATIREDDY, (Ryan C. Harris, *on the brief*) *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, New York.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Matsumoto, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED** in part and **VACATED** and **REMANDED** in part.

On July 17, 2018, Defendant-Appellant Devone Jefferys was charged with conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) ("Count 1"), attempt to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) and 2 ("Count 2"), and possessing and brandishing a firearm during a crime of violence, predicated on Count 2, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 924(c)(l)(A)(ii) and 2 ("Count 3"). The charges stemmed from an attempted robbery of a Brooklyn apartment for narcotics and money.

The Government's theory at trial was that on July 30, 2015, Jefferys and four other individuals, including Ronell Peterkin, made plans to rob an apartment in Brooklyn where Josie Taveras, a heroin dealer, lived with his mother, Haydee Cordero, and his sister, Sheila Tavera. Josie's pregnant girlfriend, Jaime Arriaga, and one of Josie's friends were also at the apartment. That night, Jefferys and the others gained access to the apartment building by following a woman through the front door; they then knocked on the apartment door, announced that they were police, and displayed a police badge. Someone inside the apartment proceeded to open the door, and Jefferys and Peterkin rushed in.

Upon entering the apartment, Jefferys began duct taping Josie and his friend. While holding a gun, Peterkin ordered the three women, Sheila, Arriaga, and Cordero, to lie on the floor. Peterkin started searching the rooms in the apartment, and Jefferys asked Josie where the drugs were, pointing a gun at Arriaga's stomach. Sheila and Josie begged that no one be harmed and told Peterkin and Jefferys that the drugs had been thrown out of the window. Sheila then offered

2

to take them to the location of the drugs. Jefferys and Sheila proceeded to the basement next to the apartment to search for the drugs; however, the drugs could not be accessed because they had landed behind a locked gate. When Sheila failed to retrieve the drugs, Jefferys forced her, at gun point, to perform oral sex on him and then raped her. After hearing a whistle, Jefferys returned to the apartment building and eventually left. When Peterkin left the apartment, Cordero called 911.

At trial, the Government offered: the testimony of multiple witnesses including Sheila, Cordero, Arriaga, and Peterkin; surveillance footage that showed Jefferys at the apartment building, as well as photographs from the apartment and back alley; physical evidence recovered at the scene; Cordero's 911 call; testimony from Jefferys's ex-girlfriend, Keyanna Williams, who testified that Jefferys had indicated he was wanted by law enforcement for a robbery and that Peterkin was involved; and evidence of Jefferys's evasion of law enforcement, as well as incriminating conversations between Jefferys and third parties, including Williams, recorded while Jefferys was detained at the Metropolitan Detention Center.

Jefferys was convicted on all counts; however, the jury did not find that Jefferys brandished a firearm, only that he possessed one, in connection with Count 2. Jefferys was sentenced to 164 months' imprisonment on Counts 1 and 2 and 60 months' imprisonment on Count 3, to be served consecutively to the sentences on Counts 1 and 2, to run concurrently, followed by five years of supervised release. Jefferys timely appealed. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

On appeal, Jefferys raises four arguments. *First*, Jefferys argues that the district court erred in permitting testimony regarding the sexual assault that allegedly occurred during the

robbery. Before trial, the district court denied the Government's motion *in limine* to admit evidence that Jefferys raped Sheila after they went to the basement to locate the drugs, finding that although the evidence of the assault constituted direct evidence of the charged offenses because the assault occurred during the robbery and against a victim of the robbery, the probative value of the evidence was substantially outweighed by a danger of unfair prejudice.

At trial, however, on cross-examination of Cordero, defense counsel elicited testimony that during the robbery, Josie told Peterkin not to harm anyone. Defense counsel then followed up: "And in fact, nobody was harmed?" to which Cordero responded, "No." Government App'x 164:13-14. The Government objected and during a sidebar explained that the question was misleading because based on the district court's previous ruling prohibiting mention of the assault, Cordero could not state that anyone was hurt; therefore, the jury was left with the false impression that no one was harmed during the robbery. The district court found that defense counsel had opened the door to evidence of the assault, and to correct the misimpression created by defense counsel, allowed Cordero to testify that she was aware that her daughter was assaulted. Cordero did not testify that the assault was a sexual assault.

The district court also permitted Sheila to testify that she was physically assaulted. During direct examination, Sheila described that when she went to show Jefferys where the drugs were, he accused her of playing games with him, held a gun to her head, and told her to get on her knees. The following colloquy ensued:

> Q: And did he then physically assault you?
> A: Yes.
> Q: And then what happened?
> A: So then after like a minute, he goes and pushed me towards the tunnel area. . . .

4

Q: And what happened next?
A: So he had the head towards, like, my head, and then to my back and at this time me and him is arguing. He basically bended me over.
Q: And did he physically assault you?
A: Yes.

Government App'x 291:19-23, 292:2-7.

Jefferys makes numerous arguments as to why admission of the assault testimony was improper. "We review the district court's evidentiary rulings for abuse of discretion." *United States v. Willis*, 14 F.4th 170, 185 (2d Cir. 2021). Here, even assuming the admission of this evidence was improper—though it likely was not, given that defense counsel opened the door, *see United States v. Gambino*, 59 F.3d 353, 368 (2d Cir. 1995) ("Otherwise inadmissible testimony may be received . . . in order to rebut a false impression created by an opposing party."), and that the testimony was sanitized —we find that its admission was harmless. Although Jefferys argues that "[f]rom the point that the jury was told the details of this alleged assault, the trial, for all intents and purposes, was over," Appellant Br. 35–36, in fact, the details of the assault were not told to the jury. Jefferys points out that the assault was then mentioned multiple times throughout closing argument, however, given the overwhelming evidence against Jefferys, including eyewitness and accomplice testimony, video surveillance from the outside of the apartment building, and incriminating telephone calls between Jefferys and third parties, "it is highly probable" that the assault evidence "did not contribute to the verdict," and therefore was harmless. *United States v. Gatto*, 986 F.3d 104, 117 (2d Cir. 2021) (internal quotation marks omitted).

*Second*, Jefferys argues that the district court abused its discretion in refusing to declare a mistrial after it was discovered that three Government exhibits with a notation of "Rape 1" on the

5

labels had been sent into the jury deliberation room.   We review the district court's denial of a motion for a mistrial for an abuse of discretion.   *United States v. Deandrade*, 600 F.3d 115, 118 (2d Cir. 2010).   At the outset, we note that defense counsel's declining of the district court's offer to inspect the evidence before it went to the jurors, may have resulted in waiver, requiring Jefferys to show that "the evidence was so prejudicial that [he] was denied a fair trial."   *United States v. Camporeale*, 515 F.2d 184, 188 (2d Cir. 1975).

Regardless, even assuming waiver is not implicated, we find that Jefferys is not entitled to a new trial because Jefferys was not prejudiced.   Although a defendant's Sixth Amendment rights are implicated and prejudice is presumed when a jury is exposed to extra-record evidence, "that presumption may be rebutted by a 'showing that the extra-record information was harmless.'" *United States v. Farhane*, 634 F.3d 127, 168 (2d Cir. 2011) (quoting *Bibbins v. Dalsheim*, 21 F.3d 13, 16 (2d Cir. 1994)).   Here, such a presumption is rebutted because there was no indication that the jurors considered the evidence.   *See United States v. Hansen*, 369 F. App'x 215, 216 (2d Cir. 2010) (finding that "extra-record evidence was not prejudicial because there was no indication that the jury actually considered it").   At the Government's request, the district court polled the jurors and asked whether they had read the labels.   None of the jurors indicated that they had, and the labels were subsequently redacted.   The district court's decision to credit the jurors' responses is entitled to substantial weight and defeats a presumption of prejudice.   *See id.*; *United States v. Weiss*, 752 F.2d 777, 783 & n.2 (2d Cir. 1985) ("The trial judge is uniquely qualified to appraise the probable effect of information on the jury, the materiality of the extraneous material, and its prejudicial nature.") (citation omitted); *United States v. Hillard*, 701 F.2d 1052, 1064 (2d Cir.

6

1983) ("the trial court has wide discretion in deciding how to pursue an inquiry into the effects of extra-record information").

*Third*, Jefferys argues that his trial counsel was ineffective based on her question to Cordero that opened the door to the assault testimony, counsel's insistence on a jury instruction regarding flight as evidence of consciousness of guilt, and counsel's failure to inspect the trial exhibits before they went into the jury deliberation room. This Court may, in its discretion, "entertain an ineffective assistance of trial counsel claim on direct appeal in a narrow category of cases where: (1) as here, the defendant has a new counsel on appeal; and (2) argues no ground of ineffectiveness that is not fully developed in the trial record." *United States v. Yauri*, 559 F.3d 130, 133 (2d Cir. 2009) (internal quotation marks omitted). Given that Jefferys's appellate counsel conceded at argument that no further development of the record was necessary, we resolve this claim. We conclude that even assuming Jefferys's trial counsel's performance was deficient, in light of strong evidence presented against Jefferys at trial, Jefferys's claim fails because he did not show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. DiTomasso*, 932 F.3d 58, 69 (2d Cir. 2019) (citation omitted).

*Finally*, Jefferys argues that should the Supreme Court hold that attempted Hobbs Act robbery is not a crime of violence, his conviction under Count 3 for violation of 18 U.S.C. § 924(c)(1)(A)(i) cannot stand because both Count 1 and Count 2 would no longer qualify as crimes of violence. As noted in Jefferys's Rule 28(j) letter, the Supreme Court, in *United States v. Taylor*, 20-1459 (June 21, 2022), decided the issue and held that attempted Hobbs Act robbery is

7

not a crime of violence. The Government agrees that in light of *Taylor*, Count 3 should be vacated. We therefore vacate Jefferys's conviction under Count 3 and remand for resentencing.

*       *       *

We have considered Jefferys's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court in part and **VACATE** and **REMAND** in part consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

8