*Paul v. City of New York*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of November, two thousand twenty-five.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge*,
> WILLIAM J. NARDINI,
> STEVEN J. MENASHI,
> *Circuit Judges*.

_____

ANTHONY ANDRE PAUL, as Co-Administrator of the Estate of Anthony Andre Paul II, deceased, ALBERTY PAUL, as Co-Administrator of the Estate of Anthony Andre Paul II, deceased,

*Plaintiffs-Appellants*,

v.                                                                                      24-2192

CITY OF NEW YORK, NORTH CENTRAL BRONX HOSPITAL, individually, NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, DEPUTY CHIEF VINCENT GIORDANO, individually and in his capacity as a member of the New York City Police Department, CAPTAIN EUGENE MCCARTHY, individually and in his capacity as a member of the New York City Police Department, DETECTIVE ANTHONY DIFRANCHESCA, individually and in his capacity as a member of the New York City Police Department, DETECTIVE RICHARD HEFNER, individually and in his capacity as a member of the

New York City Police Department, POLICE OFFICER ARAMIS RAMOS, individually and in his capacity as a member of the New York City Police Department, DETECTIVE DARREN MCNAMARA, individually and in his capacity as a member of the New York City Police Department, SERGEANT O'DOHERTY, individually and in his capacity as a member of the New York City Police Department, LIEUTENANT MICHAEL LICITRA, individually and in his capacity as a member of the New York City Police Department,

*Defendants-Appellees*,

EMERGENCY MEDICAL SERVICES OF THE NEW YORK FIRE DEPARTMENT, CAPTAIN CHRISTOPHER LINDQUIST, individually and in his capacity as a member of the New York City Police Department, CAPTAIN WILLIAMS, individually and in his capacity as a member of the New York City Police Department, LIEUTENANT MALONEY, individually and in his capacity as a member of the New York City Police Department, SERGEANT DAMERON, individually and in his capacity as a member of the New York City Police Department, SERGEANT HICKS, individually and in his capacity as a member of the New York City Police Department, DETECTIVE JACK, individually and in his capacity as a member of the New York City Police Department, POLICE OFFICER NEWMAN, individually and in his capacity as a member of the New York City Police Department, POLICE OFFICER SWEETING, individually and in his capacity as a member of the New York City Police Department, POLICE OFFICER HEREDIA, individually and in his capacity as a member of the New York City Police Department, POLICE OFFICER MCMORROW, individually and in his capacity as a member of the New York City Police Department, POLICE OFFICER BAEZ-VERAS, individually and in his capacity as a member of the New York City Police Department, POLICE OFFICER MUNOZ, individually and in his capacity as a member of the New York City Police Department, DETECTIVE ANDREW MCCORMACK, individually and in his capacity as a member of the

2

New York City Police Department, POLICE OFFICER BUNDY, individually and in his capacity as a member of the New York City Police Department, DETECTIVE GEZURIAN, individually and in his capacity as a member of the New York City Police Department, DETECTIVE WARGO, individually and in his capacity as a member of the New York City Police Department, JOHN/JANE DOES, individually and in his capacity as a member of the New York City Police Department, DETECTIVE FINBAR MCCARTHY, individually and in his capacity as a member of the New York City Police Department,

*Defendants*.

_____

For Plaintiffs-Appellants:                      DONNA ALDEA, Barket Epstein Kearon Aldea & LoTurco, LLP, Garden City, NY (Derek S. Sells, The Cochran Firm, PC, New York, NY, *on the brief*).

For Defendants-Appellees:                      JENNIFER LERNER, Assistant Corporation Counsel (Richard Dearing, Assistant Corporation Counsel, Deborah A. Brenner, Assistant Corporation Counsel *on the brief*), *for* Muriel Goode-Trufant, Corporation Counsel of the City of New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Broderick, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants Andre Paul and Alberty Paul, as co-administrators of the estate of Anthony Andre Paul II ("Mr. Paul"), ("Plaintiffs") appeal from the July 22, 2024 judgment of the United States District Court for the Southern District of New York (Broderick, *J.*), entered following a jury verdict for the Defendants-Appellees ("Defendants") after trial from May 7 to June 4, 2024. At trial, Plaintiffs argued that Mr. Paul's death on July 2, 2015, resulted from

excessive force used by officers of the New York Police Department ("NYPD") who responded to a 911 call reporting that Mr. Paul had barricaded himself within his shared apartment at Narco Freedom House. Plaintiffs also argued that Mr. Paul received deficient care at North Central Bronx Hospital ("the Hospital"), constituting medical malpractice and contributing to his death. On appeal, Plaintiffs challenge four of the trial court's evidentiary rulings. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, to which we refer only as necessary to explain our decision to **AFFIRM**.

\* \* \*

"We review a district court's evidentiary rulings under a deferential abuse of discretion standard, and we will disturb an evidentiary ruling only where the decision to admit or exclude evidence was manifestly erroneous." *United States v. Kandic*, 134 F.4th 92, 99 (2d Cir. 2025) (quoting *United States v. McGinn*, 787 F.3d 116, 127 (2d Cir. 2015)). In reviewing evidentiary rulings for abuse of discretion, we have emphasized that "the trial judge is in the best position to weigh competing interests in deciding whether or not to admit certain evidence." *United States v. Coyne*, 4 F.3d 100, 114 (2d Cir. 1993) (quoting *United States v. Rivera*, 971 F.2d 876, 885 (2d Cir. 1992)). And even where we conclude a district court has abused its discretion in an evidentiary ruling, "we will not grant a new trial if we find that the improperly admitted evidence was 'harmless—i.e., [that] the evidence was unimportant in relation to everything else the jury considered on the issue in question.'" *Cameron v. City of New York*, 598 F.3d 50, 61 (2d Cir. 2010) (quoting *United States v. Germosen*, 139 F.3d 120, 127 (2d Cir. 1998)); *see also* 28 U.S.C. § 2111; Fed. R. Civ. P. 61. "An evidentiary error is harmless 'if the appellate court can conclude with fair assurance that the evidence did not substantially influence the jury.'" *United States v.*

4

*Siddiqui*, 699 F.3d 690, 703 (2d Cir. 2012), *as amended* (Nov. 15, 2012) (quoting *United States v. Cadet*, 664 F.3d 27, 32 (2d Cir. 2011)).

### I.  Dr. Monica Smiddy's Testimony and the Autopsy Photos

Plaintiffs first challenge the district court's rulings: (1) deeming Dr. Monica Smiddy, who conducted Mr. Paul's autopsy, unavailable and admitting her deposition testimony, and (2) excluding two photos from the autopsy as unfairly prejudicial.   We need not decide whether the district court erred in these rulings because "[e]ven assuming arguendo there was error, it [was] harmless."  *United States v. Delgado*, 971 F.3d 144, 154 (2d Cir. 2020).   Plaintiffs argue that the combination of Dr. Smiddy's live testimony at trial and the two autopsy photos would have corroborated their argument that the "puncture site" described in the autopsy report, App'x 3563, stemmed from a Taser dart.    But in a portion of her deposition testimony read at trial, Dr. Smiddy explicitly reiterated her determination, reflected in the autopsy report, that the wound stemmed from a "therapeutic measure."   App'x 2950–2951.   She further testified that the wound did not resemble a wound from an embedded Taser prong.   There is no reason to conclude that Dr. Smiddy would have provided a different opinion at trial.

In addition, Defendants presented unrebutted testimony from Dr. Mark Kroll specifying that Taser wounds have "distinctive" characteristics and stating that he did not observe "a potential fourth site of a taser prong" in the autopsy materials.[1]   App'x 2920–21.   Dr. Joshua Silverberg also testified that a puncture wound "would be consistent with likely [him] trying to place an

---

[1] Plaintiffs separately argue the district court erred in admitting portions of Dr. Kroll's testimony and denying their motion for a mistrial.   Plaintiffs do not, however, challenge the admission of Dr. Kroll's testimony with respect to a possible fourth Taser prong.   In any case, as we discuss in greater length in Part II of this order, we discern no abuse of discretion in the district court's rulings regarding Dr. Kroll's testimony.

external jugular IV" and that the autopsy record led him to believe that the IV "did not hit the correct location and, therefore, there was some bleeding around that area." App'x 2292–94. There is no reason to conclude that, having heard the opinions of Dr. Smiddy, Dr. Kroll, and Dr. Silverberg, the jury might have reached a different verdict had the district court admitted the autopsy photos. Thus, even assuming any error as to the challenged evidentiary rulings, such error was harmless.

## II. Dr. Kroll's Testimony

Plaintiffs additionally challenge the district court's admission of the expert testimony of Dr. Kroll and denial of their motion for a mistrial due to the testimony. As with the district court's evidentiary rulings, "[w]e review the denial of a motion for a mistrial for abuse of discretion." *United States v. Deandrade*, 600 F.3d 115, 118 (2d Cir. 2010). "Under Rule 702, an expert with 'specialized knowledge that will help the trier of fact' may testify so long as that testimony is 'based on sufficient facts or data' and 'is the product of reliable principles and methods' that the witness has 'reliably applied . . . to the facts of the case.'" *In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 658 (2d Cir. 2016) (quoting Fed. R. Evid. 702) (alteration accepted). The district court serves "as a 'gatekeeper' to ensure that the 'expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Id*. (quoting *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007)). Here, the district court did not abuse its discretion in admitting Dr. Kroll's testimony or denying Plaintiffs' motion for a mistrial.

As an initial matter, the district court did not err in determining that Plaintiffs' challenge to Dr. Kroll's testimony was untimely. The district court's rules required that a party "serve with the joint pretrial order . . . motions addressing any evidentiary issues or other matters which should be resolved *in limine*." J. Broderick Indiv. R. & Prac. in Civil Cases Rule 6(B)(i). The district

6

court concluded that Plaintiffs had not properly moved *in limine* to preclude Dr. Kroll's testimony on the grounds ultimately raised at trial, and "[t]he district court generally has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 377 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 279 (2024) (citation and quotation marks omitted).

Even had Plaintiffs timely raised their objections to the expert testimony, moreover, Dr. Kroll's testimony was admissible. Plaintiffs are correct that expert witnesses may not include legal conclusions in their testimony. *See United States v. Feliciano*, 223 F.3d 102, 121 (2d Cir. 2000). But testimony does not constitute a legal conclusion "just because it embraces an ultimate issue." Fed. R. Evid. 704(a). Plaintiffs' Fourth Amendment excessive force claim was subject to assessment based on "an objective test of reasonableness under the totality of the circumstances." *Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir. 2000). Dr. Kroll did not offer the legal conclusion that the officers' use of force was reasonable, either in sum or substance. *See also Feliciano*, 223 F.3d at 121 ("Our review of the trial transcript shows that at no point did either Rovelli or Bair use terms from the VCAR, such as 'enterprise' or 'racketeering activity,' or respond to questions using those terms. No legal conclusions were stated by either witness.").

Nor did Dr. Kroll's testimony state "a legal standard—explicit or implicit—to the jury." *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992). While police department guidelines are "relevant to a constitutional ruling on excessive force," *Brown v. City of New York*, 798 F.3d 94, 101 n.11 (2d Cir. 2015), the ultimate question "is whether the government official violated the Constitution or federal law, not whether he violated the policies of a state agency." *Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir. 1993). Criticizing the scientific foundations of a 2015 NYPD guideline, a relevant but not dispositive piece of evidence with respect to reasonableness, did not

7

amount to communication of a *legal* standard.   Accordingly, the district court did not err in admitting Dr. Kroll's testimony.

## III.    The Root Cause Report

Plaintiffs' final challenge is to the district court's exclusion of a report produced by the Hospital's Quality Assurance Committee ("the Quality Assurance Report").   Plaintiffs argue that the Quality Assurance Report, which stated Mr. Paul "arrived in the Adult Emergency department" at 12:45 AM, App'x 385, was admissible under Federal Rule of Evidence 801(d)(2) as a party admission.   As with Plaintiffs' first argument, we need not decide whether the district court erred in excluding the report because, even assuming there was error, such error was harmless.[2]

On appeal, Plaintiffs argue that the Quality Assurance Report, which affirmed that Mr. Paul arrived at the hospital at 12:45 AM, would have corroborated their theory that the Hospital wrongly delayed treating him from 12:45 to 1:00 AM.   But the report was incompatible with Plaintiffs' theory: it specified that "[t]he ED Attending and nursing staff assessed the patient *immediately* upon arrival and never left his bedside."   App'x 385 (emphasis added).   Moreover, considering the lack of any information as to the Quality Assurance Report's generation or the basis behind its statement regarding Mr. Paul's arrival time, the jury would have had no reason to afford particular significance to the report in assessing whether treatment was delayed.   Accordingly, we conclude that, even assuming error in the exclusion of the report, such error "was unimportant in relation to everything else the jury considered on the issue in question."   *Cameron*, 598 F.3d at 61.

---

[2]  In light of this determination, we need not reach Defendants' additional argument that the Quality Assurance Report is privileged under New York law and Rule 501.

8

\* \* \*

We have considered Plaintiffs' remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk