*United States v. Kidd*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of December, two thousand twenty-five.

PRESENT:

PIERRE N. LEVAL
BARRINGTON D. PARKER,
RICHARD J. SULLIVAN,
    *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

     *Appellee*,

     v.          No. 23-6400

DARNELL KIDD, a.k.a. BLACK, a.k.a. DONNEY,
a.k.a. DONNEY BLACK,

     *Defendant-Appellant*.

MARCUS CHAMBERS, a.k.a. CHINO, a.k.a. CHI D, a.k.a. SP,

*Defendant.*[*]

_____

| | |
|---|---|
| **For Defendant-Appellant:** | HARRY SANDICK (Bharath Palle, *on the brief*), Patterson Belknap Webb & Tyler LLP, New York, NY. |
| **For Appellee:** | OLGA I. ZVEROVICH (Christopher D. Brumwell, Steven J. Kochevar, and James Ligtenberg, *on the brief*), Assistant United States Attorneys, *for* Jay Clayton, United States Attorney for the Southern District of New York, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Nelson S. Roman, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the April 14, 2023 judgment of the district court is **AFFIRMED.**

Darnell Kidd appeals from a judgment of conviction following a jury trial in which he was found guilty of using a firearm in furtherance of a crime of violence that resulted in death, in violation of 18 U.S.C. § 924(j)(1), for which he received a sentence of 420 months' imprisonment. On appeal, Kidd argues that (1) the

---

[*] The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

district court improperly excluded two 2011 police reports that contradicted the trial testimony of two government witnesses about Kidd's movements on the day of the murder; (2) the district court wrongly denied his motion for a mistrial after a government witness testified to seeing Kidd at a state probation office; and (3) the evidence at trial was insufficient to establish the predicate act of violence underlying his conviction – namely, a Hobbs Act robbery of the victim. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as needed to explain our decision.

We review a district court's evidentiary rulings under the deferential abuse-of-discretion standard, "disturb[ing] its rulings only where the decision to admit or exclude evidence was manifestly erroneous." *United States v. Skelos*, 988 F.3d 645, 662 (2d Cir. 2021) (internal quotation marks omitted). That standard governs our review of a denial of a motion for a mistrial, too. *See United States v. Deandrade*, 600 F.3d 115, 118 (2d Cir. 2010). Finally, we review challenges to the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the government and upholding the jury's verdict "if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt." *United States v. Atilla*, 966 F.3d 118, 128 (2d Cir. 2020) (internal quotation marks omitted).

## I. The District Court Did Not Abuse Its Discretion by Excluding the Police Reports.

Kidd first argues that the district court erred in refusing to allow him to introduce into evidence two police reports prepared by Detectives Peter Martin and Kevin Farrelly while investigating the murder of Jonathan Johnson more than a decade earlier for the White Plains Police Department. According to the police reports, government witnesses Karon Johnson and Skandia Delacruz both identified a third individual – Mark Jones – as the person who accompanied Kidd's co-defendant, Marcus Chambers, to meet with the victim while Kidd stayed behind. Kidd contends that the district court should have admitted these out-of-court statements pursuant to the residual hearsay exception of Federal Rule of Evidence 807.[1] We disagree.

The so-called residual hearsay exception allows for the admission of hearsay statements "very rarely, and only in exceptional circumstances." *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991) (internal quotation marks omitted).

---

[1] At trial, Kidd also argued that the statements were admissible under Federal Rule of Evidence 613(b), but he does not make this argument on appeal.

We have explained that Rule 807 permits hearsay to come into evidence only where "(i) it is particularly trustworthy; (ii) it bears on a material fact; (iii) it is the most probative evidence addressing that fact; (iv) its admission is consistent with the rules of evidence and advances the interests of justice; and (v) its proffer follows adequate notice to the adverse party."[2] *United States v. Dawkins*, 999 F.3d 767, 791 (2d Cir. 2021) (internal quotation marks omitted). The burden is on the proponent of the evidence to show that an exception to the rule against hearsay applies. *See United States v. Doyle*, 130 F.3d 523, 543–44 (2d Cir. 1997).

As the district court pointed out, Kidd failed to demonstrate that the statements contained in the police reports had sufficiently strong "indicia of reliability" to justify their admission. J. App'x at 173. At trial, the detectives themselves testified that their reports were inaccurate – intended only to "correspond with the theory that [they] had" of the case "at the time," and not to "accurately indicate" what the witnesses had said about who accompanied Chambers on the day of the murder. *Id.* at 146, 166. Detective Martin explained

---

[2] Under Rule 807, "a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception" where "(1) the statement is supported by sufficient guarantees of trustworthiness – after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement," and "(2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts."

that he "flipped" Delacruz's identifications of Kidd and Jones so that his report "contain[ed] the opposite of what she said about who stayed" behind with her. *Id.* at 146, 149. That account was somewhat corroborated by an audio recording of Martin's April 2011 interview of Delacruz, in which Delacruz confirmed that Chambers "walked off with, with Jules" – that is, Kidd – to meet the victim. *See* Suppl. App'x at 67. Detective Farrelly, for his part, emphasized that his report was "colored" by the police's "working theory" that it was Jones who went with Chambers to meet Jonathan Johnson shortly before the robbery and murder. J. App'x at 166. Farrelly could not "attest that the report that [he] wrote up [wa]s an accurate account of what Karon Johnson said during the interview," *id.* at 167, making his report vulnerable to concerns about "(1) insincerity, (2) faulty perception, (3) faulty memory, and (4) faulty narration," *United States v. Cummings*, 858 F.3d 763, 777 (2d Cir. 2017) (alteration adopted and internal quotation marks omitted).[3]

---

[3] While the inconsistencies in these important reports are problematic, we have held that evidence of irrelevant law-enforcement misconduct can "shift the focus away from the relevant evidence of the defendants' wrongdoing to the tangentially related misdeeds" of law-enforcement officers, creating "the very real possibility that the jury would improperly discredit the government's case in reaction to [the law-enforcement agents'] allegedly gross misconduct." *United States v. Malpeso*, 115 F.3d 155, 163 (2d Cir. 1997). Accordingly, misconduct alone (if any occurred here) does not permit the admission of otherwise inadmissible evidence.

It bears noting that the district court allowed defense counsel to examine Karon Johnson and Delacruz on the statements attributed to them in the reports incriminating Jones, rather than Kidd, but neither witness said he or she had made the statements described in the detectives' reports. In fact, Karon Johnson said that he believed his 2011 statements to Martin were *consistent* with his trial testimony that Kidd accompanied Chambers to meet the victim on the day of the murder. *See* Tr. at 138 ("I believe I told [detectives] the person with the blue hat and blue shirt" – Kidd – "went with Chino [Chambers] that day to the drug deal.")

On this record, we cannot say that the district court abused its discretion in determining that the statements in the 2011 reports were not "supported by sufficient guarantees of trustworthiness" to warrant their admission into evidence. Fed. R. Evid. 807(a)(1); *see also United States v. DeVillio*, 983 F.2d 1185, 1190 (2d Cir. 1993) (emphasizing that the residual hearsay exception is only to be "applied in the rarest of cases"). Because both Karon Johnson and Delacruz were available to testify about what they said in their respective interviews – and given the lack of evidence suggesting that either witness had an incentive to testify other than truthfully on the question – we are not persuaded that the police reports

7

constituted the "most probative evidence" on who accompanied Chambers that day. *Dawkins*, 999 F.3d at 791 (internal quotation marks omitted).

## II. The District Court Properly Denied Kidd's Motion for a Mistrial.

Kidd next argues that the district court abused its discretion in denying his motion for a mistrial after Karon Johnson testified that he had encountered Kidd at a state "[p]robation" office following the murder. J. App'x at 106. In a pretrial ruling, the district court permitted the government to ask a "very leading question" concerning this meeting. Suppl. App'x at 14. But given the potential prejudice that might flow from the revelation that Kidd was on probation (and thus had a prior conviction), the district court – without objection from Kidd – instructed the government to refer to the probation office as a "government agency." *Id.* at 11. Although the government complied with the court's instruction, the witness inadvertently referred to seeing Kidd at "probation" one time during his direct examination. This prompted Kidd to move for a mistrial, which the district court denied.

A mistrial is a "drastic remedy," *United States v. LaFroscia*, 485 F.2d 457, 458 (2d Cir. 1973), to be "used with the greatest caution, under urgent circumstances, and for very plain and obvious cases," *Renico v. Lett*, 559 U.S. 766, 774 (2010)

8

(internal quotation marks omitted). Karon Johnson's single reference to seeing Kidd at a "probation" office does not satisfy this high standard.

To begin, the reference to probation was "isolated, apparently unintentional on the part of the prosecution, and incidental to legitimate areas of inquiry." *Deandrade*, 600 F.3d at 119 (footnote omitted). The government had abided by the district court's pretrial ruling authorizing leading questions, continued to refer to probation as a "government agency" in subsequent questions, and consented to striking the reference from the record. Karon Johnson's slip of the tongue, in other words, was nothing more than "a fleeting portion of a response to a proper question." *United States v. Fermin*, 32 F.3d 674, 677 (2d Cir. 1994) (affirming denial of motion for mistrial where witness's reference to defendants' criminal records was "inadvertent," "ambiguous," and "immediately corrected" by a "curative instruction"), *overruled on other grounds by Bailey v. United States*, 516 U.S. 137 (1995); *see also United States v. Taher*, 663 F. App'x 28, 30–31 (2d Cir. 2016) (no abuse of discretion where district court denied motion for mistrial "after an isolated instance in which a witness inadvertently revealed that [defendant] 'went to jail' instead of using the phrase 'became unavailable'").

9

The district court also issued a curative instruction proposed by Kidd himself, directing the jury that it "may not use reference to a probation office for propensity purposes." Tr. at 162. This curative measure helped alleviate any prejudice caused by the reference. *See United States v. Batista*, 684 F.3d 333, 342 (2d Cir. 2012) (underscoring that "because we presume that a jury follows the instructions of the court, the burden is even higher" for a mistrial where the court "promptly provided the jury with curative instructions").

Finally, the fact of Kidd's presence at a probation office did not necessarily imply that he had been convicted of a crime; indeed, he could have been there in connection with another person's term of probation. Given that any inferences to be drawn from Kidd's presence at a probation office were at best speculative, and in light of the extensive evidence of Kidd's guilt – including his involvement in the murder, as well as his participation in other criminal activity – it is "extremely unlikely" that Karon Johnson's passing reference to "probation" "contributed to the guilty verdict." *United States v. Castano*, 999 F.2d 615, 618 (2d Cir. 1993). We have consistently affirmed the denial of mistrials in similar circumstances. *See, e.g., United States v. Smalls*, 719 F. App'x 83, 85 (2d Cir. 2018), *as amended* (Apr. 20, 2018); *United States v. Latulas*, 683 F. App'x 51, 54 (2d Cir. 2017). Under such

10

circumstances, we cannot say that the district court abused its discretion in denying Kidd's motion for a mistrial.

## III.   There Was Sufficient Evidence of a Completed Hobbs Act Robbery.

Kidd finally challenges the sufficiency of the evidence concerning the predicate act of violence – namely, Hobbs Act robbery – underlying his conviction. Again, we disagree.

Hobbs Act robbery requires the government to prove that a defendant (1) obtained or took the property of another; (2) against the victim's will by actual or threatened force, violence, or fear of injury; (3) thereby delaying, obstructing, or affecting interstate commerce. *See* 18 U.S.C. § 1951(a).   Kidd concedes that Hobbs Act robbery constitutes a "crime of violence," 18 U.S.C. § 924(c), and therefore functions as a valid predicate offense for his conviction under 18 U.S.C. § 924(j)(1).   He nevertheless asserts that while the government put forth "evidence of an *attempted* robbery," it failed to prove that Jonathan Johnson's homicide "was committed in the course of a *completed* robbery."   Kidd Br. at 46. In particular, Kidd contends that the government demonstrated only that he and his accomplice *tried* to steal marijuana from Jonathan Johnson, not that they actually did so.

11

A defendant contesting the sufficiency of the evidence "bears a heavy burden." *United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012) (internal quotation marks omitted). Here, ample evidence demonstrated that Chambers and Kidd stole marijuana from Jonathan Johnson. Karon Johnson, for example, testified that upon returning from meeting Jonathan Johnson, Chambers "adjusted . . . a Ziplock bag of weed that was in his pants" before "t[aking] off" with Kidd. Tr. at 133. Another witness saw Chambers and Kidd running and recalled that one of them "was holding his pants" in a manner consistent with being in possession of a bag of marijuana. *Id.* at 225. Delacruz explained that while she and Chambers did not have drugs when they traveled to White Plains that day, the pair returned to Yonkers with a "couple of Ziploc bags" of marijuana. *Id.* at 302, 329–30.

Kidd makes much of the fact that marijuana and other valuables were found on Jonathan Johnson's body by police officers, suggesting that his killers had abandoned the plot to rob him after the shooting occurred. But it is hardly "illogical," as Kidd insists, that Chambers and Kidd "stole some of the marijuana while also leaving marijuana and other valuables" behind. Kidd Br. at 46. Having murdered Jonathan Johnson, Chambers and Kidd had a strong motive to flee the scene quickly, which was consistent with their taking some of Johnson's

12

marijuana, but leaving some money and marijuana behind. Viewing the evidence in the light most favorable to the government, as we must, we cannot say that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Atilla*, 966 F.3d at 128.

*     *     *

We have considered Kidd's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court